## ESTATE OF JOSEPH BROTZMAN, DECEASED.

APPEAL BY HANNAH Y. BROTZMAN ET AL. FROM THE
ORPHANS' COURT OF NORTHAMPTON COUNTY.

Argued March 11, 1890—Decided March 24, 1890.
[To be reported.]

(*a*) A testator gave to his wife, during her widowhood, his homestead, with certain privileges and certain profits of his farm, under and subject to the provision that his daughter Catharine, so long as she remained unmarried, should have the use of a room in the house, and be furnished with reasonable provision by his wife during said term.

(*b*) He provided, further, that in case " the said devise " should, in the opinion of his executors and the survivor, be insufficient for the comfortable support and maintenance of his wife and daughter " during said term," the sum of $100 should be paid annually " during said term," to his wife and daughter and the survivor, out of the rent of an ore-bed:

1. The annuity was charged upon the realty for benefit of both the widow and Catharine and of the survivor of them ; and on the widow's death, Catharine remaining unmarried and the annuity, in the opinion of the surviving executor, being necessary for her support, she was entitled to recover it: Brotzman's App., 119 Pa. 645, followed ; Kearns v. Kearns, 107 Pa. 575, distinguished.

2. Upon a proceeding to compel the payment of the annuity out of the real estate upon which it was charged, there was no error in the allowance by the Orphans' Court of interest upon the arrears accrued prior to the first demand by Catharine for payment, from that time, and upon subsequent arrears, from the respective dates at which they accrued.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 58 January Term 1890, Sup. Ct. ; court below, number and term not given.

On September 3, 1888, Catharine Brotzman presented her petition to the Orphans' Court, averring that under the will of her father, Joseph Brotzman, deceased, the petitioner, as the survivor of her mother, then deceased, was entitled to receive out of the rents of a certain ore bed, devised by said will and thereby charged with the provision in favor of the petitioner, the sum of $100 annually so long as she should remain single, if, in the opinion of the executors of said will, such annuity was nec-

Auditor's Report.

essary for her support; that said sum was paid once during the
lifetime of the petitioner's mother, but had not been paid since;
that the petitioner remained single and, in the opinion of Rachel
Riehl, surviving executrix, said annuity had been and was nec-
essary to the petitioner's support; praying for a citation against
Hannah Y. Brotzman and others, terre-tenants of the realty
upon which the same was charged, with notice to Rachel Riehl,
surviving executrix, requiring the respondents to show cause
why said annuity should not be paid to the petitioner.   Hannah
Y. Brotzman and others answered, denying the right of the
petitioner to the annuity claimed.   Rachel Riehl answered, ad-
mitting the allegations of the petition, and making certain aver-
ments which are quoted in the opinion of the Supreme Court,
infra.

Upon the filing of the answers, the court appointed *Mr.
Robert I. Jones,* auditor, to find the facts and report a form of
decree.   The auditor reported, finding the facts as follows :

Joseph Brotzman died on September 17, 1852, and by his
will in writing, duly proved on the eighth of November follow-
ing, directed as follows :

" I give and bequeath to my beloved wife, Elizabeth, during
her widowhood, in lieu of her dower or third out of my estate,
the frame house (being the homestead) and garden attached
thereto, together with all my household goods and kitchen
furniture, with the necessary privileges in the barn, stable and
outhouses, and two cows to be fed, stabled and pastured, and
as much fire wood and coal as she may reasonably want, to be
delivered wherever she may direct on the premises, together
with one third part of the wheat, rye, corn, potatoes, and hay
that shall be raised and made on the premises hereinafter de-
vised unto my three sons, Abraham Brotzman, John Phillip
Brotzman and Josiah Brotzman.   The grain to be divided in
the bushel, and to be taken and carried to the mill and to be
ground or sold as she shall or may from time to time order and
direct, and the flour and bran made therefrom, or so much
thereof as she shall or may from time to time require, be
brought and delivered to her up-stairs in the house, free from
any cost or charge whatever; under and subject, however, that
my daughter, Catharine Brotzman, shall as long as she shall

remain single and unmarried, have the free and undisturbed use, liberty and privilege of the room up-stairs that she now has in her possession, together with the necessary privilege in the kitchen, cellar, yard, garden and outhouses, and free egress, regress, and ingress to and from said room, and be furnished by my beloved wife during said term with as much provision as she may reasonably want, without any cost or charge whatever. It is further my will and I hereby order and direct that in case the said devise should in the opinion of my son Abraham and my daughter Rachel and the survivor, be insufficient for the comfortable support and maintenance of my said wife and daughter Catharine during said term, then I order and direct that the sum of one hundred dollars shall be paid annually during said term to my said wife and daughter and the survivor out of the proceeds of the rent for the ore-bed. . . . . I give and devise unto my three sons, Abraham Brotzman, John Phillip Brotzman and Josiah Brotzman, their heirs and assigns forever, all the rest, residue and remainder of my real estate situated in Williams township aforesaid, consisting of two certain messuages or tenements and three contiguous tracts or pieces of land, containing together about one hundred and four acres more or less, with the appurtenances; provided however, that my said sons shall not have the right, liberty or privilege to divide or to sell or to convey the said premises or any part or parcel thereof during the natural life or widowhood of my said wife Elizabeth, under and subject to the devise and bequest hereinbefore given to my said wife Elizabeth and to my daughter Catharine." . . . .

Elizabeth, widow of the said Joseph Brotzman, died August 18, 1874. The plaintiff is the Catharine Brotzman mentioned in the will, and one of the daughters of the said testator. She has remained single and unmarried. Rachel Riehl is the executrix of the will. She survived Abraham Brotzman, who died July 8, 1860. Abraham Brotzman, John P. Brotzman and Josiah Brotzman made partition of the real estate devised to them, by which 33 acres and 125 perches, part thereof, was on February 17, 1853, allotted to John P. Brotzman in severalty.

Joseph Brotzman, the testator, had in his lifetime leased a certain tract containing 6 acres and 152 perches, part of the

tract or farm allotted to John P. Brotzman, to Charles Jackson, Jr., and said 6 acres and 152 perches was the ore-bed mentioned in his will.

The history of the ore leases on John P. Brotzman's part of his father's lands is as follows:

The lease made by Joseph Brotzman was on 6 acres 152 perches, and ran for eight years from March 24, 1847, with privilege of renewal. It was renewed by John P. Brotzman for another term of eight years. Also lease on an additional one acre to Glendon Iron Company by John P. Brotzman, from which royalty was received. There were also, for a portion of the time, leases on other parts of John P. Brotzman's purpart to other parties to wit: Peifer and Brotzman, Peifer and Brother and perhaps others.

John P. Brotzman died on February 8, 1861, leaving to survive him his widow, Hannah Y. Brotzman, and four children, to wit: Ulrich V. Brotzman, Ephraim Brotzman, Percy C. Brotzman and Anna Rebecca Kichline, wife of Jacob K. Kichline, to whom his real estate descended. In the answer, it is stated that Ephraim has sold to his brother and sister and has no interest in the property, and this averment is not denied by the plaintiff. The interest of Hannah Y. Brotzman, widow of John P. Brotzman, in the said 33 acres, 125 perches, is only her statutory dower.

Joseph Brotzman's widow, Elizabeth, resided in the house and on the premises devised to her for life, until her death. Catharine, the petitioner, lived with her and was boarded by her until August 18, 1874, when her mother, the said Elizabeth, died, leaving Catharine to survive her. Catharine after that, up to the time of this proceeding, resided in the rooms devised to her by the will.

As to the use of the garden and the other privileges, there have been some changes, whether slight or essential does not appear from the testimony, and it is not important in this proceeding.

As to the disputed matters under the petition and answer, I find and return:

1. That in the opinion of Rachel Riehl, the surviving executor, the payment of the $100 annually is necessary for the comfortable support and maintenance of the said Catharine

Auditor's Report.

Brotzman, petitioner, and has been necessary since the death of Elizabeth Brotzman, August 18, 1874.

2. That the payment of the $100 was made once, at least, to Elizabeth Brotzman in her lifetime, in pursuance of the authority given therefor in the will of Joseph Brotzman, deceased, and Peter Peifer, then guardian of the minor children of Joseph P. Brotzman, deceased, and agent for Hannah Y. Brotzman, had actual notice of said payment, and knew causes which led to its being then made.

3. That in fact there is now and has been since the death of Elizabeth Brotzman, the widow, necessity for the payment of said $100, annually, and that the devise in the will of Joseph Brotzman, deceased, is and has been insufficient for the comfortable support and maintenance of the petitioner.

I am not convinced from the testimony of the witnesses that any demand was made on Peter Peifer* for this annuity. The answer denies it, and so does Peifer. Mrs. Riehl and her daughter do not sufficiently prove a demand on Peifer; if the demand is material to the petitioner's recovery, she must fail. I do not think, however, that the question of notice or demand on Peter Peifer or the heirs of John P. Brotzman is a material one in the case. The sum of $100 shall be paid annually during said term to Elizabeth and Catharine and the survivor, out of the proceeds of the rent of the ore-bed, in case the said devise should be insufficient, etc., and the farm is devised to the three sons, Abraham, John Phillip and Josiah, under and subject thereto. The testator in express terms declares that his sons shall not have " the right, liberty or privilege to divide or to sell or to convey the said premises, or any part or parcel thereof, during the natural life or widowhood of my said wife Elizabeth." This provision was violated by the partition made February 17, 1853, under which the father, John P. Brotzman, had allotted to him in severalty the 33 acres, 125 perches, and after this partition $100 was paid the widow, as admitted in the answer, for one year.

Under the will, instead of demand by the executors or Elizabeth for the $100, it was rather the duty of the sons to

---

* Peifer was the guardian of the children of John P. Brotzman. They were all of age, however, when this proceeding commenced.

Arguments.

ask releases from the annual payment chargeable, if the devise was insufficient in the opinion of the executors. And it seems as though this litigation might have been avoided, had the plain directions of the will been obeyed and partition postponed until the death of the widow.

—Upon his findings of fact, the auditor reported, as his opinion, that the petitioner was entitled to a decree for the annuity from and after the death of her mother, in accordance with the views expressed by the Supreme Court in Brotzman's App., 119 Pa. 645, and that interest should be allowed from the time at which the bill in equity was filed in 1881, upon all arrears which accrued prior thereto, and upon the subsequent instalments, from the dates at which they accrued. He therefore stated an account, finding that there was due to the petitioner $1,856, and recommended a decree that the said sum, together with costs, be levied of and from the lands and tenements allotted to John P. Brotzman in the amicable partition between the devisees of Joseph Brotzman, deceased, and that said lands and tenements be adjudged liable for the payment thereof in the hands of any and all persons claiming the same or any part thereof.

Hannah Y. Brotzman, widow, and Ulrich V. Brotzman and others, heirs, of John P. Brotzman, deceased, filed exceptions to the report, alleging that the auditor erred in finding that the petitioner was entitled to the decree recommended in the report;[1] in allowing interest on the arrears of annuity;[2] in finding that the question whether there was notice to or demand on the exceptants or Peter Peifer, their agent, was immaterial;[3] in not recommending a decree that the citation be dismissed at the petitioner's costs;[9] and not finding that the annuity ceased at the death of Joseph Brotzman's widow.[10]

After argument, the court overruled the exceptions and confirmed the report, whereupon the exceptants took this appeal, specifying that the court erred:

1–3, 9, 10. In overruling the exceptions to the auditor's report.[1 to 3  9  10]

*Mr. William Fackenthall* (with him *Mr. B. F. Fackenthall*), for the appellants:

1. We contend that Catharine's rights ceased with the death

Arguments.

of her mother. This is the proper construction of the provision that if the "said devise" should in the opinion of the executors be insufficient for the support of the widow and Catharine "during said term," the sum of $100 shall be paid "annually during said term" to the widow and Catharine "and the survivor." The words, "said devise," mean only the devise to the widow. There is but one devise, and that is to her. The whole of the house, farm products, etc., were given to the widow, but her enjoyment of them was made subject to a charge in Catharine's favor. There was no devise to Catharine herself, and the phrase in question can mean nothing else than the devise to the widow. The conclusion thus arrived at, by a process of reasoning, is supported by the decision in Kearns v. Kearns, 107 Pa. 575, a case on all fours with this one.

2. So, the words, "during said term," mean the term of the devise to the widow. She was the object of the testator's bounty, in this clause, and the charge in Catharine's favor upon the devise to the widow was solely for the purpose of inducing Catharine to remain with and care for the widow. The only thing in the will that creates any ambiguity is the phrase, "and the survivor of them." But these words must be considered in connection with the entire clause, and in subordination to the intention of the testator as manifested by the will as a whole: Still v. Spear, 45 Pa. 168; Reck's App., 78 Pa. 432; Musselman's Est., 5 W. 9; Schott's Est., 78 Pa. 40; Lynn v. Downes, 1 Y. 518. So considered, this phrase must be treated, in view of what we have already said as to the "devise" and the "term," either as surplusage, or, as added out of a superabundance of caution to preserve to the widow the benefit of the provision for her, in the event of Catharine's dying before she did.

3. If Catharine be entitled to the annuity after her mother's death, when does it commence? Rachel Riehl never formed or expressed an opinion that it was necessary for Catharine's support, or communicated such an opinion to the appellants or any one else, so far as the testimony shows, until after Catharine filed her bill in equity in 1881. Her opinion, then first expressed, cannot be antedated so as to create a liability for the annuity from the widow's death. And her opinion

Opinion of the Court.

must be formed in the exercise of a sound discretion; a necessity created by Catharine's improvidence would not be sufficient. There was no demand for the annuity prior to 1881, and the necessity for a demand was not dispensed with by the partition between the sons, who were all sui juris and could make what agreement they chose. At most, the annuity could be recovered only from 1881. Moreover, interest should not have been allowed on the arrears: Heller's App., 116 Pa. 534.

*Mr. W. H. Armstrong*, for the appellee, was not heard.

PER CURIAM:

When this case was here before: Brotzman's App., 119 Pa. 645, it was in the equity side of the Court of Common Pleas, and we held that the proceeding should have been commenced in the Orphans' Court, which has exclusive jurisdiction in the case of a charge upon real estate. We dismissed the bill, at the same time saying: " Upon the merits, we are all with the learned auditor, and are of opinion the plaintiff is entitled to the sum awarded her, but as she is in the wrong court, we cannot help her in this proceeding. The court reversed the auditor, and dismissed the bill. We are constrained, in view of what has been said, to affirm the decree, but it is without prejudice to her right to proceed under the act of 1834 in the Orphans' Court."

The case comes up now regularly from the Orphans' Court, and we adhere to our former views. We do not agree with the position assumed by the appellants that the devise in the will of Joseph Brotzman was intended only for the benefit of his widow, and that the rights, if any, of his daughter Catharine, fell with the death of her mother. It is plain, from a careful examination of the whole will, that the testator intended to make a provision for Catharine so long " as she remains single and unmarried." He makes a provision for the support of his widow, the details of which it is unnecessary to repeat, and couples it with a direction that his daughter Catharine shall share the benefit thereof so long as she remains single and unmarried, and then adds this clause: " In case the said devise should, in the opinion of my son Abraham and daughter Rachel and the survivor, be insufficient for the comfortable

Opinion of the Court.

support and maintenance of my wife and daughter Catharine during said term, then I order that the sum of $100 shall be paid annually during said term to my said wife and daughter and the *survivor*, out of the proceeds of the rent of the ore-bed." Here is a distinct charge upon the real estate for the benefit of both the widow and Catharine, and of the survivor of them. It was to continue for the widow during her widowhood, and for Catharine so long " as she remains single and unmarried." This is what was intended by the use of the words " during said term." Why should the testator cut off Catharine's support at the death of the mother? The plain intent of the will is to provide for the one during widowhood, and for the other so long as she remained single. In this respect the case differs essentially from Kearns v. Kearns, 107 Pa. 575.

There is no room to doubt that the devise referred to for the support of the widow and Catharine did become inadequate for the comfortable support and maintenance of Catharine. It was made so, in part, at least, by the conduct of the testator's sons. The homestead privileges given by the will were rendered fruitless, to a great extent, by the sale of the property in violation of the terms of the will. Abraham Brotzman, one of the executors, died in 1860. Rachel Riehl, the surviving executrix, and one of the respondents in this proceeding, who, by the terms of the will, is made the judge of the sufficiency of the devise for Catharine's support, makes answer as follows : " I state and aver, further, that my opinion of the insufficiency of said devise for said comfortable support and maintenance, and of the necessity of such yearly payments, was known to respondent, whose land was charged with payment of the same, at the time of said first payment, and that he, and his representatives since his decease, have known of the same, and that complaints were then made, and have since continued to be made by complainant, of her need for such yearly payments by reason of the insufficiency of said devise for her (Catharine's) comfortable support and maintenance, repeatedly made by her therefor, and that then, and since, I have repeatedly asked and demanded of respondents that said yearly payments be made promptly, as provided by said will." The neglect and refusal of the respondents to make these payments are the more inexcusable from the fact that the ore-beds, upon which this sum

Case Stated.

was charged, were remunerative, and amply sufficient to meet it.

No error is apparent in the allowance of interest on the arrears of the annuity. The principal sums were payable annually, and upon every recognized principle of law would draw interest from maturity. Authorities are not needed for so self-evident a proposition.

> The decree is affirmed, and the appeal dismissed, at the costs of the appellants.