SECURITY SAVINGS BANK, Appellant, v. PETER WILLIAMS et al., Appellees.

**LIFE ESTATES:** Mortgage of Fee by Life Tenant. Testamentary
1   power to a life tenant of real estate to mortgage the property, in order to raise funds for the discharge within a named time of specified legacies which are made a lien on all the land, and which become the personal debt of the life tenant by the act of taking under the will, embraces the power to mortgage the *fee* for the amount of said legacies and the interest accumulating thereon.

**LIFE ESTATES:** Power to Mortgage—Noneffective Court Order.
2   Testamentary power in a life tenant of real estate to mortgage the property is in no degree enlarged by an authorizing order of court, entered without notice to the objecting remaindermen.

**WILLS:** Interest on Legacies. Legacies draw interest from the
3   date of their maturity.

*Appeal from Johnson District Court.*—RALPH OTTO, Judge.

MARCH 23, 1920.

THE opinion states the case. The plaintiff appeals.— *Reversed.*

*W. J. McDonald, Grimm, Wheeler, Elliott & Jay,* and *Floyd Philbrick,* for appellant.

*Hart & Hart* and *Milton Remley,* for appellees.

LADD, J.—I. Peter Williams, Sr., died testate, July 18, 1902, leaving him surviving a widow, Ellen, four daughters, and two sons. His will was admitted to probate, September

9th following, and the estate was closed, November 22, 1903. In the first paragraph of the will, the testator devised:

1. LIFE ESTATES:
mortgage of
fee by life
tenant.

"To my beloved wife, Ellen M. Williams, a life interest in and to all real property of which I may die seised or possessed the same to use to her use and support, she to receive all rents, profits and emoluments, derived therefrom so long as she shall survive me."

In the second paragraph:

"I will and bequeath that upon the death of my said beloved wife, that my said beloved son, Peter Williams, shall have and become owner in all real estate mentioned in the next preceding paragraph of a life estate therein and upon the death of my said beloved son the said property shall pass and go to the heirs of his body and become vested in them in fee simple, absolute, provided, however, should my said beloved son die without issue then the said real estate shall pass and go to his sisters, Lizzie F., Nellie H., and Jennie A., or to the survivors of them; it being my will that all of my real estate of whatever kind or nature of which I may die seized or possessed shall first be subject to the life estate or interest of my said beloved wife as provided in the first paragraph hereof, and upon her death shall pass to my beloved son, the said Peter, and that the said son shall have a life estate therein and that he shall not be privileged to mortgage or sell the said real estate or any part thereof except that he shall be allowed to mortgage the said real estate for the purpose of obtaining money with which to pay his sisters Lizzie F., Nellie H., and Jennie A., the several sums bequeathed to them as provided in the next succeeding paragraph hereof."

The third paragraph:

"Upon the death of my beloved wife, Ellen M., I will and bequeath that my son, the said beloved Peter Williams, shall pay to my beloved daughter, Lizzie F., the sum of twen-

ty-five hundred dollars, and shall pay to my beloved daughter, Nellie H., the sum of two thousand dollars, and shall pay to my beloved daughter Jennie A., the sum of one thousand dollars, the said several sums bequeathed in this paragraph to be paid within one year from the death of my beloved wife, and to become a charge and lien upon all real estate left in my estate and passing into the hands of my said beloved son, Peter, as in the next preceding paragraph provided until said several sums are fully paid."

In Paragraph 4, the testator disposed of his personal property; and in Paragraph 5, he directed who should pay the expenses of his last sickness and burial of himself and wife, and provided for the erection of a monument at his grave. A copy of the will will be found in *Williams v. Williams,* 157 Iowa 621, in which case Peter Williams, Jr., was held to have taken a life estate only. The widow, Ellen M. Williams, departed this life, December 14, 1904. The several legacies were not paid, as required by the will, —that is, in one year from the death of the widow,—probably owing to the minority of Peter Williams, Jr., who did not attain his majority until January 3, 1909. Shortly thereafter, he was married to the defendant Lillian Williams. In November of that year, Peter Williams, Jr., and his three sisters, legatees under the will, entered into an agreement extending the time of payment of the several legacies ten years, or until his death, if sooner, stipulating therein that the lien of the legacies against the real estate shall not be released thereby. He concluded, however, in November, 1911, to borrow money and pay these legacies, and first applied to the district court, sitting in probate, for authority to borrow $7,500 for that purpose. An order was entered in probate, directing him so to do, but without causing notice of the application to be served on his minor children. In April, 1912, the mortgage for the above amount was executed by the defendants Peter and Lillian Williams,

and all the proceeds paid on the legacies and interest thereon, and some besides; and the legatees released their claims. As interest due April 1, 1916, and on the same day of 1917, was not paid, the plaintiff, as mortgagee, instituted a suit of foreclosure. Prior to the beginning of the suit, Lillian Williams had been appointed guardian of the three minor children of herself and Peter, i. e., Ellen, Lillian and Illene, all of tender years, and, as such guardian, interposed an answer, reciting that the mortgage was executed pursuant to the terms of the last will, for the purpose of paying off the legacies provided for therein; that her wards were entitled to the proceeds of the sale of the farm in excess of the amount required to pay the mortgage described in plaintiff's petition.   Decree of foreclosure was entered, May 11, 1918, and a supplemental decree was entered, four days later, directing that any excess above the amount required to discharge the mortgage should be paid over to the guardian of the minors.   On July 3rd of the same year, the guardian moved that the decree be modified, so as to limit the foreclosure to the life estate of Peter Williams, Jr., so that it "shall not effect or bar the rights of said minors to their remainder of said land in fee simple, absolute, after the termination of the life estate of said Peter Williams, Jr., and that, in the decree as modified, the rights of said minors be protected, as aforesaid."   Resistance was interposed, and hearing had thereon two days later.   On September 28th following, a decree was entered, providing that:

"The said decree and supplemental decree heretofore entered in this cause be and the same are hereby modified and changed to the extent that the judgment herein referred to shall not have any force or effect against the said minors herein referred to, nor shall the same affect the interest of said minors in and to the real estate in said decree described."

The main issue to be determined is whether the will

authorized Peter to execute the mortgage against the entire estate, or merely his life interest. Appellee argues that, while denied the right to sell or mortgage the life estate, he was allowed to mortgage it for a specific purpose, to wit; to obtain money out of which to pay legacies. On the other hand, appellant contends that the legacies were made liens against the estate in its entirety, and he was authorized to incumber the same to secure their payment.

The order of the district court in probate, directing Peter Williams, Jr., to mortgage the land, added nothing to the authority conferred by the will. It was entered without notice to the minors, to whom the testator devised the remainder, or to their guardian. But the will did allow him to mortgage for a specific purpose: i. e., the payment of the legacies. That it was competent for the testator to devise a life estate, coupled with the power to incumber the entire estate, appears from *Law v. Douglass*, 107 Iowa 606; *Spaan v. Anderson*, 115 Iowa 121; *Rowe v. Rowe*, 120 Iowa 17; *Steiff v. Seibert*, 128 Iowa 746. In such a case, the right to sell, mortgage, or otherwise alienate the remainder for a specific purpose, is annexed as a separate gift to the life tenant. Did the will confer on Peter Williams, Jr., the power to mortgage the estate in fee simple, or was it merely an exception to the limitation placed on his enjoyment of the life estate? To sustain the latter construction, appellee relies on *Zavitz v. Preston*, 96 Iowa 52. There, the testator devised certain described land to his grandson, Ernest G. Preston, "together with the rents and issues thereof during his natural life; he, however, paying to his mother, Ella Preston, $5.00 each and every month during her natural life, said payments to be and remain a lien upon said premises until paid; and at the death of my grandson, Ernest G. Preston, the premises so bequeathed to him to go to, and be equally divided between, his lawful

2. **LIFE ESTATES: power to mortgage: non-effective court order.**

heirs and next of kin." The only points decided were that the grandson took a life estate only, and that there was a breach of the covenant. True, the court said, in the course of the opinion, that:

"The provision for the payment of a sum to Mrs. Preston monthly during her natural life, and making it a lien upon the premises until paid, created, at most, a lien upon the estate actually granted to the devisee, and did not enlarge it."

This seems to have been pure dictum; for it was not one of the questions the court undertook to decide, as appears from the opinion. At most, it was said by way of argument, as negativing any inference which might be drawn from the charge's being a lien on the remainder. The other case cited, *Giles v. Little,* 14 Otto (U. S.) 291 (26 L. Ed. 745), has since been overruled by *Roberts v. Lewis,* 153 U. S. 367 (38 L. Ed. 747), construing the fee to have passed to the widow. The principle obtains, however, as stated in *Giles v. Little,* supra, that:

"When a power of disposal accompanies a bequest or devise of a life estate, the power is limited to such disposition as a tenant for life can make, unless there are other words clearly indicating that a larger power is intended."

See *Henderson v. Blackburn,* 104 Ill. 227 (44 Am. Rep. 780). The language of wills differs so radically that little aid is to be found in the decisions of this and other courts. Three features of the will are important. The first of these is that the land devised is nowhere described, and is referred to throughout the instrument as real property or real estate. Peter Williams, Jr., is required to pay the legacies within one year after the death of the widow. They are made his indebtedness, which he assumed in accepting under the will. The legacies are made "a charge and lien upon all real estate left in my estate and passing into the hands of my beloved son, Peter, as in the next preceding

paragraph provided, until said several sums are fully paid."
There can be no doubt that the legacies became a charge
and lien upon the 194 acres of land in question, even though
it were held that a separate power to mortgage the same
was not conferred on Peter. Were we not referred to the
preceding paragraph, there could be no doubt as to the
expression "all real estate in my estate," for he left personal
property, which was disposed of in the fourth paragraph;
and these words, unmodified, must have been construed as
meaning all the realty of which he died possessed. Had tes-
tator intended to incumber the life estate only, this would
have been easier and better said than by referring back to
another paragraph, and describing the subject to which the
lien was to attach, in terms meaning the land itself,—the
corpus, as distinguished from the title thereto. This neces-
sarily is so; for, immediately following, and in the same
clause, his title is limited to a life estate. The thought
manifest from the language employed is that the real estate
should "pass to" Peter for the enjoyment of his life inter-
est therein; and this is in harmony with the language of
the third paragraph, creating a lien for the amount of the
legacies on real estate "passing in the hands" of Peter, in-
dicating an unlimited fee. In the first paragraph, he had
given his wife "a life interest in and to all real property of
which" he might die seized, and in the second paragraph,
it was provided that Peter, upon her death, "shall become
owner in all real estate, mentioned in the next
preceding paragraph, of a life estate therein;" and, to
make certain that there would be no misunderstanding, he
reiterated his intention that "all of my real estate of what-
ever kind or nature" shall be subject to the "life estate
or interest" of his wife, and, upon her death, shall pass to
Peter, and that he shall have a life estate therein. It is
pertinent here to inquire what is to pass to Peter. There
can be but one answer to that inquiry, and that is, "all of

my real estate of whatever kind or nature." As argued, a
life tenant, unless denied the authority so to do, may in-
cumber or dispose of his life estate; and, as power to mort-
gage the fee impinges on the remainder, and is regarded as
a separate and independent gift, the intention to confer
such gift must clearly appear, and, as we think, does so
appear from the language employed, when construed in con-
nection with the context and the situation of the parties.
Bearing in mind that the realty being disposed of is uni-
formly referred to as real property, real estate, or all real
estate, let us, for convenience, segregate the portion of
Paragraph 2:

"It being my will that all of my real estate of what-
ever kind and nature of which I may die seised or possessed
shall first be subject to the life estate or interest of my said
beloved wife as provided in the first paragraph hereof, and
upon her death shall pass to my beloved son, the said Peter,
and that the said son shall have a life estate therein and
that he shall not be privileged to mortgage or sell the said
real estate or any part thereof except that he shall be al-
lowed to mortgage the said real estate for the purpose of
obtaining money with which to pay his sisters, Lizzie F.,
Nellie H., and Jennie A., the several sums bequeathed to
them as provided in the next succeeding paragraph hereof."

It will be observed that the subject of disposal is "all
of my real estate of whatever kind or nature;" that he first
disposes of a life estate to his widow, and, following that,
to his son. If he had stopped, then the son might have done
with his life estate as he pleased, but he could not have in-
cumbered the remainder; so the testator proceeded to deny
him the privilege to mortgage or sell "the said real estate
or any part thereof." To what "real estate" did this refer?
Manifestly, that previously mentioned: that is, "all of my
real estate of whatever kind or nature." He continues:

"Except that he shall be allowed to mortgage the said

real estate for the purpose of obtaining money" to pay the legacies. Can there be any question as to what was referred to in using the term "the said real estate?" We think not; for, although a life estate might be included in the expression (Section 48 of the Code), a precedent is too clearly indicated to permit of the substitution of another. His life estate was included in the term "real estate," and, in denying the privilege of mortgaging or selling the realty, he was prohibited from incumbering or selling the life estate included therein, and at the same time from mortgaging, save for a specific purpose. The power to mortgage evidently was conferred with design of enabling Peter to discharge the obligation to pay the legacies which he assumed in accepting under the will, within the time specified, and to insure the legatees the prompt payment of their shares in the distribution of their father's estate. The testator may well have concluded that the exaction of so large an amount from Peter within a year after entering upon the enjoyment of the life estate would be unfair to him, and would be likely to occasion such delay as might impair the value of the gifts to his daughters, and, to avoid these consequences, conferred the power to mortgage on Peter. The charge and lien against the land doubtless were created to make payment certain, and the testator evidently relied on his son's having sufficient interest in the use of property and in transmitting it unimpaired to his children, to induce the discharge by him of the legacies, or the mortgage executed for their payment. Appellees suggest that such a construction renders the clause giving the power, repugnant to the clause providing that, "upon the death of my said beloved son, the said property shall go to the heirs of his body and become vested in them in fee simple, absolute." This is found in the same paragraph conferring the power to mortgage. The contention is so fully disposed of by what was said in *Law v. Douglass,* 107 Iowa 606, that noth-

ing need be added.  We are of opinion that a power to mortgage the entire estate was coupled with the gift of a life estate, and that the court erred in ruling that only the life estate of Peter was subject to the mortgage.

II. The legacies amounted to $5,500, and, as previously ruled, were made a charge and lien on the entire estate. The will required their payment within one year after the widow's death, or by December 14, 1905.

**3. WILLS: interest on legacies.** From this time, the legacies drew interest, and the contract between the legatees and the life tenant, in so stipulating, merely undertook to do what the law required.  The courts quite generally hold that a legacy, in the absence of restrictions, statutory or otherwise, will bear interest after one year from the testator's death, or the admission of the will to probate.  The time of such payment, however, may be postponed or accelerated by the requirements of the will. Here, the time of payment was definitely fixed.  See, as bearing hereon, *In re Rutherford*, 196 N. Y. 311 (89 N. E. 820) ; *Ashton v. Wilkinson*, 53 N. J. Eq. 6 (30 Atl. 895) ; *Good Samaritan Hospital v. Mississippi Valley Trust Co.*, 137 Mo. App. 179 (117 S. W. 637) ; 40 Cyc. 2093–2099, and cases collected; 2 Woerner on Administration, Section 459. In *Buchanan v. Hunter*, 166 Iowa 663, it was observed that:

"Strictly speaking, interest on a legacy is in the nature of damages or compensation to a legatee for withholding the payment of a gift after it is due, according to the terms of the will.  If not then paid, the estate of the testator or executor of his will is liable as any other debtor for legal interest from such day; and this is true, although the estate be not ready for final settlement, or the money with which to pay it be not yet available.  Interest so exacted

and paid is no part of the testator's gift, but is the penalty interposed for the failure to pay it when due."

See, also, 2 Woerner on Administration (2d Ed.) 1004. The case at bar is to be distinguished from that of *Buchanan v. Hunter*, supra, for the neglect of the executor to pay as exacted in the will is not involved. Here, the burden of payment was cast upon the life tenant, though secured by the lien of the legacies against the estate. The design of the testator, manifested in the will, was that the legacies should be paid within a year after the life tenant took possession. The legacies were to be paid at a determinable date, i. e., within one year from the death of the first life tenant; and it is to be assumed, in the absence of anything to the contrary, that he intended that the law with reference to the payment of interest should apply, the same as in any case where an obligation matures and is not met by payment. The rate of interest to be charged, in the absence of other provision, is determined by the law of the domicile. *Welch v. Adams,* 152 Mass. 74 (9 L. R. A. 244), and valuable note; *Sloan's Appeal,* 168 Pa. St. 422; *Gray v. Case School of Applied Science,* 62 Ohio 1 (56 N. E. 484). Such interest is exacted when the legacy is made a charge against land. *Glen v. Fisher,* 6 Johns. Ch. *33 (10 Am. Dec. 311); *Brotzman's Estate,* 133 Pa. 478 (19 Atl. 564); *Van Bramer v. Executors of Hoffman,* 2 John. (N. Y.) 200 (1 Am. Dec. 162). See, also, collection of cases in 40 Cyc. 2101. As the second life tenant enjoyed the use of the land from the date of the death of the first life tenant, there appears no sound reason for relieving the former from the payment of interest on the legacies from the day of their maturity. Being in the enjoyment of rents and profits of the estate, he was required, under the law, to pay the interest on incumbrances charged as liens against the estate. Had the second life tenant executed a mortgage to raise

money with which to pay the legacies, he must have charged the estate with interest on the amount borrowed. May the obligation to pay interest be obviated, in the meantime, by delays in the execution of such mortgage? We think not. Of course, the life tenant must keep the interest down, and it was the duty of Peter Williams, Jr., as between him and the remaindermen, his three children, to have paid the interest. *Wilson v. White*, 133 Ind. 614 (19 L. R. A. 581) ; *Damm v. Damm*, 109 Mich. 619 (63 Am. St. 601) ; *Tindall v. Peterson*, 71 Neb. 160 (8 Ann. Cas. 721) ; *Smith v. Barham*, 17 N. C. 420 (25 Am. Dec. 721). But the omission of the life tenant to pay interest will not relieve the estate, if charged with the lien for the payment thereof. As the legacies were made a lien on the land, and required to be paid at a determinable time, and, under the law, bore interest from that date, we are of opinion that the intention fairly to be implied is that the interest also was to be included in such lien. This finds strong support in the circumstance that the testator anticipated that the second life tenant, Peter, might not be able to discharge the lien on the estate at maturity, and authorized the execution of a mortgage thereon, to obtain money with which to pay the legacies. He must have contemplated that such indebtedness would bear interest, for money might not be borrowed on such security without also pledging the estate as security for payment of interest. The money might have been so borrowed at the maturity of the legacies, and thereby the land charged with the payment of the interest. He must have intended, then, the interest to be a charge on the land; and we are of opinion that the interest on the legacies from maturity, in connection with said legacies, constituted a lien on the realty devised by the decedent. The court erred in modifying the decree.—*Reversed.*

WEAVER, C. J., GAYNOR and STEVENS, JJ., concur.