IN RE ESTATE OF WILLIAM R. JEFFREY and LIDA JEFFREY.

MYRTA A. JEFFREY et al., Appellants, v. LILLIE J. WALLACE et al., Appellees, A. P. JEFFREY, Intervenor, Appellee.

No. 44262.

JUNE 21, 1938

REHEARING DENIED SEPTEMBER 23, 1938.

S. W. Livingston and George O. Van Allen, for appellants.

Baldrige & Bailey, for defendants Lillie J. Wallace, A. P. Jeffrey, trustee intervenor, A. P. Jeffrey, administrator.

A. E. Baldrige, guardian ad litem for defendants Bette and Jean Jeffrey.

MITCHELL, J.—William R. Jeffrey lived in Washington County, Iowa, from childhood until his death in 1922, at the age of eighty-seven years. His wife, Lida Wright Jeffrey, survived him and died at the age of ninety-five in 1934. Mr. Jeffrey was a man of rather large financial interests and owned many acres of Washington County real estate. On February 9, 1920, being physically unable further to look after his property, he and his wife executed a deed of trust and last will and testament. The material part of the instrument in so far as this controversy is concerned, is as follows:

"KNOW ALL MEN BY THESE PRESENTS:

"That, We, the undersigned, William R. Jeffrey, eighty four years of age, and Lida Wright Jeffrey, husband and wife, both of Washington County, Iowa, being unable to further handle, care for and conserve our property and estate, and for the purpose of making provision therefor and for its distribution after our decease, in consideration of One Dollar in hand paid to us and other good and sufficient considerations, do hereby give, grant, transfer, assign and convey to F. S. Finley and H. G. Jeffrey, in trust, for the purposes hereinafter specified, all

personal property and interests therein, of every kind and description now owned or hereafter acquired by us, and all real estate or interests therein belonging to us or which may be hereafter acquired, the principal part of which said real estate now owned is described as:

(Here follows a minute description of all property.)

" * * *

"Said Trustees are hereby directed and given full power and authority to manage, direct, control and conserve all of said property and estate and expend such sums of money as may be in their judgment necessary for the improvement, care and upkeep of said property; to adjust and settle in such manner as they deem best all just claims or indebtedness against either of us; to ask, demand, sue for, compromise, and settle, collect, receive and give receipts and releases for all moneys, debts and demands of every kind which are now or shall became due, or owing and belonging to the undersigned, and to defend or maintain any legal proceedings or actions when in their judgment the good of our property and estate demand same.

" * * *

"They shall make provision for the payment of such family and other expenses as may in their judgment be fit and proper for the comfort and support of the family and household of either of the undersigned as long as they may live, and shall pay to Myrta A. Jeffrey the sum of Five Thousand Dollars and to Jessie W. Jeffrey the sum of Five Thousand Dollars as soon as funds are available for said purpose.

"At the death of both of the undersigned, said Trustees acting as either Trustees or executors, shall sell and convert into money all of our property not previously sold by them, of every kind and description and for said purpose they are given full power and authority to sell and convey any of said property at such times and for such prices and upon such terms as they may deem best without authority of court or notice to any party in interest.

"From said proceeds they shall pay all just debts, claims and charges against either of us and our estates which shall include a suitable monument or monuments.

"The remainder of said property shall be distributed by said Trustees or executors in equal shares to the seven children:

Lillie Wallace, William R. Jeffrey, Jr., Hiram G. Jeffrey; Myrta A. Jeffrey, Katherine J. Finley, Jessie W. Jeffrey, John H. Jeffrey. Provision has heretofore been made for the son Asahel P. Jeffrey.

"None of said eight children shall be charged with or required to pay any money advanced or loaned to them by either of us, when the final division is made and all such loans and advancements shall be cancelled and released, and are given to the recipients thereof.

"We hereby further give and grant unto said Trustees and executors full power and authority to do and perform each and every act and thing whatsoever required and necessary to be done in and about the premises as fully as we might or could if personally present and hereby ratify and confirm all that they may do in the said premises by virtue hereof.

"We further make this instrument our last will and testament, and give, grant and devise all of our property to the persons and in the shares specified above subject to the rights and powers given to said Trustees and executors herein.

"We nominate and appoint F. S. Finley and H. G. Jeffrey as our executors and exonerate them and each of them from giving bonds either as Trustees or executors.

" * * * *

"In addition to other considerations, this instrument is executed by the undersigned William R. Jeffrey and Lida Wright Jeffrey in consideration of the execution thereof by the other.

"The undersigned F. S. Finley and H. G. Jeffrey accept this trust and promise and agree faithfully to perform and discharge all the duties of said Trustees as herein specified.

"Witness our hands this 9th day of February, 1920.

"William R. Jeffrey
"Lida Wright Jeffrey
"F. S. Finley
"H. G. Jeffrey.

"The above instrument was witnessed by Nellie L. Tripp and Edward C. Eicher, and William R. Jeffrey and Lida Wright Jeffrey acknowledged it to be their voluntary act and deed before N. L. Tripp, Notary Public."

The trustees named entered upon their duties and so con-

tinued until the death of William R. Jeffrey, which occurred in 1922. Soon after the death of the testator the instrument was probated as his last will and the same persons qualified as executors. Later one of them died and A. P. Jeffrey was appointed and qualified as executor and trustee, in October of 1928.

In July of 1934 Lida Wright Jeffrey died, and the instrument was probated as her will. F. S. Finley and A. P. Jeffrey qualified as Executors.

On the 2d day of February, 1937, Myrta A. Jeffrey and Jessie W. Jeffrey filed in the office of the clerk of the district Court of Washington County, Iowa, their application for an order to construe the provisions of the deed of trust and last will and testament executed by William R. Jeffrey and Lida Wright Jeffrey, parents of the applicants. The principal part of the application is as follows:

"Plaintiffs further state that by Paragraph Six (6) of said Deed of Trust, the plaintiffs were each made the donees of the sum of five thousand dollars ($5,000.00), a copy of which paragraph is as follows, to-wit:

" 'They shall make provision for the payment of such family and other expenses as may in their judgment be fit and proper for the comfort and support of the family and household of either of the undersigned as long as they may live, and shall pay to Myrta A. Jeffrey the sum of Five Thousand Dollars and Jessie W. Jeffrey the sum of Five Thousand Dollars as soon as funds are available for said purpose.'

"Plaintiffs further state that a question has arisen between the two plaintiffs and some of the other heirs, defendants herein, as to whether said plaintiffs are entitled to interest on said gifts as to the amounts which have not been paid and from what date said interest runs.

"Plaintiffs herein claim that the estate is liable to them for interest over a period from the one year after the date when the property was turned over to the Trustees. * * * ''

There was a hearing, at which evidence was offered. The lower court entered an order that the bequests to Myrta A. Jeffrey and Jessie W. Jeffrey of the sum of $5,000 each, should draw interest at five per cent from one year after the death of Lida Wright Jeffrey. Costs were taxed against the estate.

Myrta A. Jeffrey and Jessie W. Jeffrey being dissatisfied, have appealed.

There is no dispute between the parties in regard to the law. It is conceded to be the general rule that legatees are entitled to interest on their legacies from the time the legacy is due them. We quote from appellants' brief:

"An article by Albert M. Kales, famous authority on future interests appearing in 2 Illinois Law Review 443, and entitled 'Do Legacies Bear Interest in Illinois,' has the following to say:

" 'In the light of this source of law it clearly appears to be the law of Illinois that general pecuniary legacies draw interest from the time they are due and payable. Such has been the law of England for at least two centuries. Such has been the rule of every state court of the Union where the question has arisen and been fully considered, and which has been found * * *. Such appears to be the law in Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, New York, New Jersey, Pennsylvania, Maryland, District of Columbia, West Virginia, Virginia, North Carolina, Alabama, Mississippi, Tennessee, Kentucky, Ohio, Michigan, Indiana and Iowa.' "

In the case of Security Savings Bank v. Williams, 188 Iowa 904, 176 N. W. 971, the provision of the will in question was as follows (pages 905, 906, 176 N. W., page 972):

"Upon the death of my beloved wife, Ellen M., I will and bequeath that my son, the said beloved Peter Williams, shall pay to my beloved daughter, Lizzie F., the sum of twenty-five hun -dred dollars, and shall pay to my beloved daughter, Nellie H., the sum of two thousand dollars, and shall pay to my beloved daughter Jennie A., the sum of one thousand dollars, the said several sums bequeathed in this paragraph to be paid within one year from the death of my beloved wife, and to become a charge and lien upon all real estate left in my estate and passing into the hands of my said beloved son, Peter, as in the next preceding paragraph provided until said several sums are fully paid."

And at page 913 of 188 Iowa, 176 N. W. 975, the court had this to say with reference to the running of interest:

"The legacies amounted to $5,500, and, as previously ruled,

were made a charge and lien on the entire estate. The will required their payment within one year after the widow's death, or by December 14, 1905. From this time, the legacies drew interest, and the contract between the legatees and the life tenant, in so stipulating, merely undertook to do what the law required. The courts quite generally hold that a legacy, in the absence of restrictions, statutory or otherwise, will bear interest after one year from the testator's death, or the admission of the will to probate. The time of such payment, however, may be postponed or accelerated by the requirements of the will. Here, the time of payment was definitely fixed.''

In the case of Buchanan v. Hunter, 166 Iowa 663, at page 669, 148 N. W. 881, at page 883, this court said:

''Strictly speaking, interest on a legacy is in the nature of damages or compensation to a legatee for withholding payment of a gift after it is due according to the terms of the will. If not then paid, the estate of the testator or the executor of his will is liable as any other debtor for legal interest from such date; and this is true, although the estate be not ready for final settlement or the money with which to pay it be not yet available. The interest so exacted and paid is no part of the testator's gift, but is the penalty imposed upon the failure to pay it when due.''

The all-important question in the case at bar is, ''when did these legacies become due?''

Citation of authority is not of much assistance. It is necessary to construe the will as a whole and determine from it what the testator intended.

The pertinent part of the instrument is as follows:

''They shall make provision for the payment of such family and other expenses as may in their judgment be fit and proper for the comfort and support of the family and household of either of the undersigned as long as they may live, and shall pay to Myrta A. Jeffrey the sum of Five Thousand Dollars and to Jessie W. Jeffrey the sum of Five Thousand Dollars as soon as the funds are available for said purpose.''

The bequest to the two daughters was limited with the provision, ''as soon as funds are available for said purpose.''

And so the question to be answered is, when, under this

record, were funds available? At the time this instrument was executed William R. Jeffrey was the owner of a considerable amount of real estate but he was also indebted in a large amount. There was a $25,000 obligation to the Farmers and Merchants Bank, and another obligation of $15,000, making a total of $40,000 for which he was indebted at that very time. At the time of his death he owed approximately the sum of $35,000, which was filed in claims against his estate. In addition to this, there were the costs of administration to be paid, and the total debts with the costs were fixed at a little over $40,000. The indebtedness owed by the estate at no time was less than the amount of $32,000, and at the time of the death of Lida Wright Jeffrey was approximately $35,000.

The undisputed record shows that at no time from the date that the trust agreement was made until the death of Lida Wright Jeffrey in 1934, was there sufficient cash to pay these two bequests. In fact, at no time during the long period of years, approximately sixteen, was there sufficient money on hand to pay claims against the estate.

It is the contention of the appellants that it was the duty of the executors to sell the real estate and pay their claims. It is interesting to note that at no time during the sixteen years this instrument was in force was there any demand made by either one of the claimants for their money; at no time did they request it; at no time did they claim they were entitled to it. We are not passing upon the question of whether a demand was necessary or not; we are just calling attention to the fact that these two applicants, who were closely connected with the family —in fact, one of them wrote checks upon the family account— did not demand or ask for their money during that period of time.

 The estate did have considerable real estate holdings, which at one time were very valuable. However, this court will take judicial notice of how values of real estate in Iowa shrunk during that period following 1920. It is an easy matter for one familiar with real estate to give an opinion as to what the real estate is worth; but it is an entirely different proposition to sell that real estate and secure the amount which the experts say it is worth. There is no market for real estate as there is for other commodities; if it is forced upon the market it will bring not its value but rather what someone seeking a bargain is willing

to pay. The parties interested in this estate, by their conduct showed that they desired this real estate held in the hope that prices would advance. Certainly, there is no showing here that it could ever have been sold at forced sale and brought sufficient to pay the debts, the costs, and the bequests.

When this instrument was prepared it was specifically provided that these sums of money would not be paid until funds were available for that purpose. A fair interpretation of the instrument, it seems to us, shows that until the death of the widow, which occurred in 1934, there were no funds available to pay these bequests; that it was impossible until that time to know whether or not funds would ever be available. And it necessarily follows that these bequests were not due until one year after the death of Lida Wright Jeffrey, and that they draw interest from that date, which was the finding and decree of the lower court.

This case must be, and it is hereby,—Affirmed.

The CHIEF JUSTICE, and ANDERSON, KINTZINGER, DONEGAN, RICHARDS, SAGER, and MILLER, JJ., concur.

HAMILTON, J., takes no part.