MARY ANN WAY, Respondent, v. JOHN G. PRIEST,
EXECUTOR, Appellant.

### May 1, 1883.

1. WILL CONSTRUED.— The intention of the testatrix in this case was that one legatee, Perry, should have $56,000 with interest from the testatrix's death; and that notes were to be selected by and charged to the legatee, so as to give her interest thereon at six per cent.

2. INTEREST. — Where no rate of interest is mentioned, interest at six per cent only is payable.

3. ADMINISTRATION — EXECUTORS. — An executor is not in default for refusing to pay legacies within the first year of administration.

4. —— An executor may not be compelled to pay legacies within the first two years of administration without an order of court and the tender of a sufficient bond.

APPEAL from the St. Louis Circuit Court, LINDLEY, J.
*Affirmed.*

E. T. & J. H. FARISH, for the appellant: It is well settled law, that when a person, who is put to an election or selection under a will, once makes a valid selection or election under and by virtue of the terms thereof, with a full knowledge of the facts and rights to which the person put to his selection was entitled, he is forever bound and concluded by such election. — 2 Redf. on Wills (3rd ed.), 362; *Winton* v. ——, 21 Beav. 447; *Sanger* v. *Wood,* 3 Johns. Ch. 421. A general legacy, though directed to be paid as soon as possible, or " as soon as convenient," is not payable until one year after the death, or the grant of letters. — 1 Rev. Stats. 1879, p. 37, sects. 1, 2; 2 Redf. on Wills, 466, 469, 470; *Webster* v. *Hale,* 8 Ves. —; *White* v. *Donnell,* 3 Md. Ch. 524.

JOHN M. GLOVER, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

On April 26, 1879, during the March term of the probate court of the city of St. Louis, on motion of Mary

Ann Way, the probate court ordered John G. Priest, as executor of Eliza M. Perry, to pay to Mrs. Way on account of the interest due upon her legacy under the will of Mrs. Perry, the sum of $2,500.   The motion is not in the record, and we do not know what amount Mrs. Way moved the court to direct the executor to pay her.   The executor appealed from the order, and, on trial anew in the circuit court, the executor was ordered to pay $3,018.75.   This order was made on October 11, 1882, and from this judgment defendant appeals.

It appears from the evidence that Mrs. Perry died on February 5, 1873, leaving an estate valued at $125,000. This estate consisted of notes secured by deed of trust, and money ; but the money was only a few hundred dollars. The investments had been carefully made, and the notes were all considered well secured when Mrs. Perry died. Afterwards, there was a commercial crisis which greatly depreciated real estate.   The notes were, however, all collected without foreclosure, except in two instances, in one of which there was no loss, and, in the other, a loss of $2,000.

The last will of Mrs. Perry was dated January 2, 1873. Priest was appointed, and qualified, as executor.   By this will, Mrs. Perry bequeathed $56,000 to Mrs. Way ; $41,000, in various sums, to twelve other legatees ; and, after one or two specific legacies of various articles of personal property, and small annuities to servants, named certain persons as residuary legatees.   The will was proved on February 8, 1873, and Priest qualified as executor.   The exact date does not appear, but it was within a year after the probate of the will.

The language of Mrs. Perry's will as to the bequest to Mrs. Way, is as follows : " To Mary Ann, wife of James C. Way, of St. Louis, Missouri, the sum of $56,-000.   In satisfaction of this legacy, the said Mary Ann Way may select any notes secured by deed of trust

which I may leave, whereof the principal sum shall not in the aggregate exceed the sum of $56,000 ; and these, when so selected, my executor shall transfer and deliver to her in satisfaction of the legacy, or so much thereof as the notes so selected shall amount to, together with each of the interest notes of said principal sums as will make such principal sum bear interest from the date of my decease." ·

Amongst the secured notes which came into the executor's hands on taking charge of the estate, were the following : —

Walsh, at two years ; due November 15, 1874 ; paid, together with the interest notes, June 30, 1875 ; for $5,000, bearing interest at ten per cent.

Pendleton, at five years ; due July 15, 1874 ; paid at maturity ; for $10,000, bearing interest at ten per cent.

Barthalow, at three years ; due June 10, 1874 ; paid at maturity ; for $15,000, bearing interest at eight per cent.

Blanke, at three years ; due September 12, 1874 ; paid at maturity ; for $2,500, bearing interest at eight per cent.

Allen, at five years ; due July 17, 1876 ; paid at maturity ; for $3,000, bearing interest at ten per cent.

Armstrong, at five years ; due June 12, 1874 ; for $20,-000, bearing interest at ten per cent. One interest note was paid to the executor on June 15, 1873 ; the remaining sum was collected in 1878, by foreclosure.

Balmer, at five years ; due June 6, 1876 ; for $6,000, interest at ten per cent. This note was not paid. The mortgage was foreclosed with a loss of about $2,000. The property was bought in by the executor for the estate.

James C. Way, the husband of Mary Ann Way, the legatee, had been the agent of Mrs. Perry during her lifetime, and was entirely familiar with the character of the notes, their amounts, and the time of the maturity of each.

On March 25, 1874, which, according to the testimony of Mr. Priest, was before the end of the first year of adminis-

tration, Mr. Way, acting for his wife, made a demand in writing of Priest for some of the notes.

This demand set forth that Mrs. Way was entitled under the will to take, in satisfaction of the bequest of $56,000, any of the notes of Mrs. Perry together with such interest notes as will make the principal bear interest from the time of her death ; and asks for the following notes, together with their interest notes, to make up the interest from the death of Mrs. Perry.    The demand states that, if any interest accruing at Mrs. Perry's death is included in any interest note, the applicant is ready to account for the interest.    The notes demanded were those made by Pendleton, Barthalow, Balmer, Blanke, Allen, and Armstrong, amounting to $56,500. According to his testimony, Way promised to pay the excess of $500 over the legacy, to Priest, in cash.    Priest declined to entertain the demand, on the ground, as he says, that the first year of administration had not expired ; that he would make no distribution without an order of court ; and that he would make none without an indemnifying bond.    Way says, however, that Priest assigned no reasons, but simply refused to discuss the matter.

On July 30, 1874, Way made a demand for the notes of Walsh, Balmer, Allen, and Blanke, aggregating $16,500. This was rejected by Priest.

On March 3, 1875, Way made a third demand for the notes of Armstrong, Pendleton, Barthalow, Balmer, and Walsh.    This differed from the first demand by omitting the Allen and Blanke notes, and inserting the note of Walsh.    This demand was for $56,000 as to the principal of the notes.    It was rejected by Priest, as the other demands had been.

Under the order of the probate court, Priest has paid to Mrs. Way, in all, $63,000 — that is, the principal of the legacy and $7,000 on account of interest, at the following dates, and in the following amounts : March 24, 1875, $34,720 ; May 9, 1876, $10,080 ; June 14, 1878, $11,200 ; January 28, 1879, $7,000.

It is contended by Mrs. Way that, by virtue of her first demand upon the executor, she became entitled to the notes demanded; that, as they were retained by the executor, she ought to have the proceeds at the rate of interest each note bore up to the date of collection, and after collection six per cent upon the amounts collected. On this theory plaintiff claims over $13,000 as due her by the executor, after crediting him with all payments. The executor contends that the legacy was not payable, and would not bear interest, until one year after the date of letters, except as to those notes legally demanded; that the first demand was illegal and excessive; that the second demand, for four notes, aggregating $16,500, was good. On this theory the executor contends that, after deducting payments, there was due Mrs. Way, on April 26, 1879, $1,899.55.

The circuit court held the first demand to be good, and made an allowance on that basis directing that $500 should be deducted from the first list of notes, and this from the note bearing the highest interest; that interest should then be calculated on the notes included in that demand at the rate they bear from Mrs. Perry's death to maturity, and after that, at six per cent to date of judgment.

After careful consideration of the facts and of the language of the will, we are of opinion that the intention of the testatrix, to be gathered from the language of the will, is, that Mrs. Perry should have $56,000, with interest from the death of the testatrix. As no rate of interest is named, this means legal interest, which is six per centum in Missouri, in the absence of any express direction for a larger sum. The executor was to deliver notes to the legatee upon demand; but these notes were to be charged to the legatee so as to give her interest on the principal at the rate of six per cent only. The estate, it appears, was not indebted. But the executor could not know this, and would not have been safe in making any payment to a legatee, without an order of court and an indemnifying bond, within the first two years

of administration; and was not compellable to make distribution or pay legacies under any circumstances, except in case of perishable legacies, within one year. Rev. Stats., sects. 243, 244. No bond was tendered by Mrs. Way. As the statute is express that no administrator shall be compelled to pay legacies or make distribution within two years from the date of his letters unless bond and security to refund be given by the legatee, we think that the executor was not in default until a demand for specific notes was made, after the first year, accompanied with the tender of a good bond. The legatee was bound to know the law as well as the executor. But we cannot see that the legatee was prejudiced by the neglect of the executor to comply with the demands. The first was made within the first year, and the executor might safely refuse to honor it, even if bond had been tendered. The second was for notes worth $16,000, and, as the date of the letters is not shown, we cannot see that that was not within the first year of administration. At the date of the third demand, Mrs. Way had already received $34,720, and was not entitled to $56,000, in notes.

We are of opinion that the amount due to Mrs. Way is to be ascertained by calculating interest at six per cent on $56,000 from the death of Mrs. Perry to the first payment, and deducting that payment from the sum then ascertained; on this balance interest at the same rate should be calculated to the date of the second payment, which should be deducted from the sum ascertained, and so on, calculating interest on the balance found after the date of each payment. As the result of this calculation would be to give Mrs. Way a larger judgment than that found by the circuit court, and as she does not complain of that judgment, and does not appeal, we see no ground for reversing the judgment, and it will therefore be affirmed, with the concurrence of all the judges.