GOOD SAMARITAN HOSPITAL et al., Respondents, v. MISSISSIPPI VALLEY TRUST COMPANY et al., Defendants; HARTMAN et al., Appellants.

**St. Louis Court of Appeals.   Opinion Filed March 23, 1909.**

INTEREST: Wills: Contest of Wills. While a suit contesting a will is pending and undetermined, the executor of the will cannot carry out its provisions and is not liable to a legatee for interest on the legacy on account of his failure to pay it when it was properly payable but for the pending contest, until after a determination of the contest and a certification of the establishment of the will to the probate court; after that time the executor is liable to the legatee for interest.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster,* Judge.

REVERSED AND REMANDED (*with directions*).

Thos. J. Rowe for appellant Hartman.

Geo. W. Lubke and Geo. W. Lubke, Jr., for respondent.

REYNOLDS, P. J.—By his will Frederick Heman, among other bequests, bequeathed to the Good Samaritan Hospital and the Pastor of Zion's German Lutheran Church $1,000 each, and to the German Protestant Orphans' Home $3,000. The will was admitted to probate by the probate court of the city of St. Louis and letters testamentary granted thereon to the Mississippi Valley Trust Company, January 21, 1902. On February 25, 1902, the executor named filed proof of publication of the letters. On March 22, 1902, John C. Heman, one of the sons of the testator instituted an action in the circuit court of the city of St. Louis against his brothers and sisters and their descendants, as also against all the other legatees and devises named in the will, or their representatives, including the representatives of the three institutions above named contesting the will. On the 21st of April, 1902, notice of the contest was filed in the probate court and the authority of the Mississippi Valley Trust Company, as executor, suspended, an administrator of the estate *pendente lite* being appointed. The trial of the contest over the will resulted in a verdict and judgment sustaining it, from which judgment the contestor, sole plaintiff in the contest, perfected an appeal to the Supreme Court, and, on May 24, 1905, that court affirmed the judgment sustaining the will. A transcript of the judgment of the circuit court sustaining the will, on its affirmance by the Supreme Court, was filed in the clerk's office of the probate court, July 22, 1905, and thereafter the Mississippi Valley Trust Company, executor, again took on the administration of the estate by virtue of its appointment under the will, and, on the twenty-sixth day of January,

1906, paid to the. pastor in charge of Zion's German Lutheran Church the legacy of $1,000, to the representatives of the Good Samaritan Hospital the legacy of $1,000, and to the German Protestant Orphans' Home the legacy of $3,000. In accepting payment, however, these legatees, in and by their receipts, reserved the right to demand whatever interest they might be or were legally entitled to upon said legacies by reason of payment having been withheld from them.

The estate of the testator consisted of both real and personal property and the value of the residue, after paying all specific legacies, satisfying all claims of creditors, devisees and other legatees, as well as all costs and expenses attendant upon the administration and settlement of the estate was more than sufficient to pay the principal of these general legacies, as also to pay interest accruing on them between the expiration of one year after taking out of the letters and the date on which the principal of the legacies was paid. Upon the refusal of the executor to pay this interest, the three legatees named, on March 8, 1906, filed in the probate court of the city of St. Louis, a motion which, after reciting the fact of the payment of the principal of the legacies, averred that they have received no interest thereon, had received the payment of the principal of the legacies under protest and under an agreement that by the receipt of the principal they should not be prejudiced or affected in their claim to interest; and for ground of motion stated, first, that their legacies became due and payable in one year after the original grant of the letters executory upon the estate of the testator, to-wit, the twenty-first day of January, 1902, and that they had not contested the will of the testator; second, that they are entitled to interest on their several legacies from January 21, 1903, that being one year after the letters had been granted, at six per cent per annum. They accordingly moved the probate court to enter up an order against the Mississippi Val-

ley Trust Company, as executor, to pay them interest upon their several legacies at that rate from that date until date of payment. The motion was heard in the probate court on an agreed statement of facts which, setting out the will in full, set out the other matters hereinbefore noted. The probate court sustained the motion and ordered payment of the interest on these legacies at the rate of six per cent per annum from January 21, 1903. An appeal from this action of the probate court was taken to the circuit court by Minnie Hartman, a daughter of Frederick Heman, deceased, who was a son of the testator, and by Lottie Heman, executrix of the estate of John Henry Heman, deceased, also a son of Frederick Heman, deceased. The trial in the circuit court resulted in like action as that had in the probate court, that is to say, the interest claimed from a year after the date of the original grant of letters was allowed in favor of the legatees named. From this action of the circuit court, after a motion for new trial had been duly filed and overruled and exceptions saved, the two Hartman ladies prosecuted an appeal to this court.

The able counsel for appellants and for respondents have filed briefs and arguments in support of their respective contentions which display an unusual amount of research on their part. We do not consider it necessary to burden this opinion with a repetition of them, any further than necessary in announcing our conclusion, more particularly as a great many of them, in fact the most important ones, are cited and commented on in a very exhaustive opinion by Judge GILL, in the case of In re Estate of Catron, 82 Mo. App. 416.

Our statute provides: "If the validity of a will be contested . . . letters of administration shall be granted during the time of such contest . . . to some other person, who shall take charge of the property and administer the same according to law,

under the direction of the court, and account for and
pay and deliver all the money and property of the estate
to the executor or regular administrator when qualified
to act." This is now section 13 of the Revised Statutes
1899, and it has been the law of our State for a great
many years. It is the only section covering the powers
and duties of an administrator *pendente lite*. Constru-
ing this section, our Supreme Court held in Union Trust
Co. v. Soderer, 171 M'o. 675 l. c. 679, that it is not con-
templated that this administrator *pendente lite,* as he is
called, will wind up and distribute the estate, but that
he will collect it and hold it and make disbursements,
if the court so orders.

In Lamb, Admr., v. Helm, Admx., 56 M'o. 420 l. c.
433, it is said that administrators appointed, pending a
contest over the will, occupy more nearly the position of
a receiver, who acts under the direction of the court, than
they do the position of a general administrator.

Other cases not necessary to cite have followed in
construing this provision of the statute in this way.

In State ex rel. v. Guinotte, 156 Mo. 513, it was
held that under this section, if the validity of a will is
contested, the administrator so appointed should hold
while the contest lasted and that the contest lasted while
the appeal from the circuit court in such case was pend-
ing and that no bond was required to give the appeal
the effect of a *supersedeas.* That case was decided by a
divided court, one of the dissenting judges being Judge
VALLIANT, who afterwards, however, in Carroll v. Reid,
158 Mo. 319, l. c. 321-2, said that while he had not con-
curred in that opinion, yet as it was concurred in by the
majority of the court, it is now the law on that subject.
In the Guinotte case, Judge SHERWOOD, who delivered
the majority opinion of the court, said, at page 525,
"In consequence of the result of the will contest
not having been officially certified down from the circuit
court to the probate court, it was impossible for the

latter to acquire any jurisdiction over the matter appealed from, to-wit, the validity of the will, and that even had the result been properly certified, still the probate court could not have acquired jurisdiction, by reason of the fact that the appeal taken from the circuit court carried the matter appealed from to this court; (the Supreme Court) and the appeal itself, from the very nature and necessity of the case, carried its own *supersedeas* along with it." Hence, pending the contest, no one had authority to pay these legacies; even the court could not have ordered payment.

"Interest," says Judge Woerner, 2 American Law of Administration (2 Ed.), *p. 1004, "in the sense in which the word is used in connection with the payment of legacies, is the compensation allowed by law for the deprivation of a legacy or distributive share beyond the period when it is payable according to the terms of a will or statute." He states as a general rule, that interest is payable in some States at the end of a year after the death of the testator; in other States, as in this State, at the end of a year after the taking out of letters of administration.

Rice, in his work on American Probate Law & Practice, Edition of 1894, section 5, pp. 373 to 377, after stating that the general rule is that legacies will carry interest after the the expiration of a year from the death of the testator, states that the object of this limitation was only to allow a specified time to the executor or administrator, after taking out letters, to settle the estate, and it was not designed to affect or modify the rights of the parties interested in claims or legacies; and he states the general doctrine to be that interest on a legacy only begins to accrue when the legacy itself is payable; that until the legacy is payable there is no fund to produce interest.

In State ex rel. Nichols v. Adams, 71 Mo. 620, it is held that while the suit contesting the will was undetermined, the executrix could not carry into effect the

provisions of the will and could not, therefore, be in default to the legatees; that interest should be allowed only from the time the suit to contest the will was dismissed and not from the date of the first annual settlement. Practically, this decision settles this case, as our attention has been called to no case holding to the contrary. It is said, however, of this case, that this rule is not applicable in the case at bar because in the Adams case the claimant was the only one who had instituted the proceeding to contest the validity of the will, and that, therefore, that case, rightly interpreted, means that a different rule prevails in favor of those who have not only not contested the will, but have defended it. It is distinctly held, however, in this Adams case that the fact that plaintiff in it had contested the will was no estoppel against her making the claim; that that was not one of the cases of estoppel in regard to wills mentioned in the books. This same case, State ex rel. Nichols v. Adams, was relied on in the case of In re Estate of Catron, 82 Mo. App. 416, and the doctrine recognized as the law of this State, that the mere fact of the contesting of the will was not an estoppel one way or the other. This case of In re Estate of Catron is now relied on as authority for the claimants in the case at bar. The opinion in the case by Judge GILL is well worthy of careful reading, not only because he has examined and cited many of the cases relied on by counsel in the case at bar, but because of its accurate treatment of the subject. But the Catron case has no application to the present case in so far as settling the right to this interest, it being interest claimed as due on a general legacy, bequeathing not the interest, as in the Catron case, but a fixed and definite sum. In the Catron case a certain sum was set apart and directed to be loaned by the trustee, in whose hands it was to be placed, that trustee to loan out the sum and pay over the interest to the legatee, hence the legacy itself, so far as the real beneficiary was concerned, was

the interest; the testator established a fund, the interest on which was to go to the support of a daughter. Hence in Catron's case, it was held that the contest over the will, tying up the estate so that the fund could not be deposited with the trustee, but placing it in the hands of the administrator *pendente lite,* the interest bequeathed could be paid through or by the trustee, but that when the estate was released by the end of the contest, the estate owed to the beneficiary that which was the very *corpus* of the bequest, namely, the interest, and that the legatee to whom this interest was due, could not be deprived of it by the contest over the will; could not be deprived of the very thing bequeathed to her, namely, interest on the fund. Therefore, the court, when the fund was released by the determination of the contest, holding that the beneficiary was entitled to receive this income from the fund and that the fund having remained in the custody of the administrator *pendente lite* until the determination of the contest over the will, held that the estate was responsible to the beneficiary for this interest on it from the time that she would have received that interest if no contest had existed. That is a very different case from the case at bar. Here the bequest was direct to the legatees, of a specific sum, a general legacy of a certain sum, not by way of an annuity but the bequest of a sum certain and fixed. It was not payable either under the will or the law until the contest over it was determined. The first probate was set aside, in law, by the contest, as completely as if never made. The final probate only occurred when the will was established by the decree, and until established no legacies were payable. As the law and not the act of the parties suspended the payment of the legacy until the determination of the contest over the will, the administrator *pendente lite,* of course having no power in the meantime to pay it over, the legacy itself did not fall due, in contemplation of law, until it was capable of being paid out by the executor under the will, and no

interest is due the legatees under circumstances of this kind, pending the contest. It makes no difference that these appellants, representatives of some of the residuary legatees, were not responsible for tying up the legacy, they not having contested, as urged by their counsel, for the respondents were also of those who sustained the will. The real point as we see it, is that the testator charged his estate with a certain sum in favor of these three legatees, and there is no reason why the estate should be charged with a larger sum under the name of interest, than that designated by the testator, merely because the law, not the act of the executor of the will, suspended and forbade payment.

All the authorities hold that no demand is necessary to cause interest to run when a legacy falls due and becomes payable, therefore, in this case, as there are some six months intervening between the date when the certification of the action of the Supreme Court, and of the circuit court in upholding the will, was lodged with the probate court, and the date of payment by the executor of these legacies, and as no reason is shown why they were not paid immediately upon the certification of the establishment of the will, all the interest that these parties are entitled to on their legacies, and we think they are entitled to that, is interest from the date of the certification of the establishment of the will to the date on which the legacy was actually paid over by the executor, according to the agreed statement of facts in the case; that is to say, interest at the rate of six per cent from July 22, 1905, to January 26, 1906, the last date being the date of payment of the principal, together with interest on that amount of interest from January 26, 1906, to the date it shall be paid them at the rate of six per cent per annum.

The case is reversed and remanded with directions to enter up an order accordingly, in favor of these respondents. *Goode, J.,* concurs; *Nortoni, J.,* not sitting.