## Hoskinson's Estate.

*Wills—Legacy—Interest on legacies—Waiver of parties—Act of Feb. 24, 1834, P. L. 73, section 51.*

1. A legacy bears interest from the time payable under the terms of the will, and, in absence of a provision to the contrary, interest

begins to run from the expiration of a year from testator's death, under the Act of Feb. 24, 1834, P. L. 73.

2. Where the time of payment is deferred by testator, interest is not chargeable until the expiration of that time, unless the relation between testator and the legatee is such that the law infers an intention to pay interest.

3. Where a testator gives lands to his sons at a value to be fixed by appraisers, and the sons are required to account for such valuation in final settlement, and a final account is not possible until certain mining rights reserved by the will have been sold, and there is no provision in the will for the payment of interest by the sons, and all parties acquiesce in a postponement of the sale for several years, the sons will not be charged with interest until final settlement, although the will directs that the mining rights shall be sold within a reasonable time after testator's death.

Argued October 5, 1920. Appeal, No. 158, Oct. T., 1920, by Mary S. Davis, decedent's daughter, from decree of O. C. Greene Co., March T., 1920, No. 1920, dismissing exceptions to auditor's report in estate of William P. Hoskinson, deceased. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Exceptions to report of Joseph Patton, Esq., auditor. Before RAY, P. J.

The opinion of the Supreme Court states the facts.

The auditor held no interest was liable on legacies. The court dismissed exceptions thereto. Mary S. Davis, decedent's daughter, appealed.

*Error assigned,* inter alia, was decree, quoting it.

*E. C. Higbee,* of *Sterling, Higbee & Matthews,* for appellant.—Interest was payable on the shares of the sons: Gilbert's App., 85 Pa. 347; Hart v. Homiller, 20 Pa. 248; Hartzell's Est., 178 Pa. 286; Fishburn's App., 10 W. N. C. 489; Hill's App., 13 W. N. C. 402; Yundt's App., 128 Pa. 269; Patterson's App., 128 Pa. 269; Koon's App., 113 Pa. 621.

*A. F. Silveus,* with him *D. C. Cumpston,* for appellees.
—No accounting by these devisees and legatees is required under the terms of the will, until the coal and other property have been sold and the proceeds be ready for distribution, and the will makes no provision for interest on these devises and bequests ad interim, and none can be charged: Ziegler v. Grim, 6 Watts 106; Hermann's Est., 220 Pa. 52; Yost's Est., 134 Pa. 426; Gunning's Est., 234 Pa. 148; Lefebvre v. D'Arcy, 236 Pa. 235.

OPINION BY MR. JUSTICE FRAZER, December 31, 1920:

This is an appeal from a decree of the orphans' court overruling exceptions to the report of an auditor, awarding distribution of funds in the hands of an administrator. The sole question presented for review is the correctness of the action of the court below in refusing to charge interest on the appraised value of land and bank stock testator gave to his sons at a value fixed by appraisers.

Testator died in 1908 and in his will devised a farm to one of his sons, subject to the reservation of mining rights, the son to take at a price or valuation to be fixed by appraisers, chosen in a designated manner, and directing that the son "account for the valuation money of said land in the settlement of [the] estate and the said valuation money shall be a charge and lien on said land until accounted for." A second farm was devised to another son on substantially the same terms and conditions. There was also a gift of shares of bank stock to a third son "at a price or valuation to be fixed" by appraisers with direction that the devisee "account to [the] estate for the valuation or price of the same." Testator also directed his executors to sell the mining rights above referred to "upon such terms as they......may deem advisable......the same to be sold in a reasonable time after [his] death," and directed that the money derived from such sale, together with the valu-

ation money on the farms devised to his sons, and all money derived from other sources, be treated as one fund and, after payment of legacies, divided into four equal parts which were bequeathed to his daughter and three sons respectively, in the proportions named, deducting from the shares of the sons the valuation placed upon the farms and bank stocks devised and bequeathed to them. A trust was created for one of the sons and testator directed that the executors be not compelled to settle their trust account until the death of the son, but "must settle their account or accounts as executors at the time or times and in the manner required by law."

Following the death of testator the farms mentioned in the will were duly appraised, all parties in interest agreed upon a valuation of the bank stock and the sons were permitted to take possession of the land, the stock was transferred to the devisee and the daughter of testator paid the sum of $2,000, as an advancement on account of her share on final settlement of the estate.

The mining rights were not immediately sold but held by the executors in expectation of later realizing a higher or better price for the property. The executors took no further action toward settling the estate and filed no account until nine years later, at which time an assignee of the share of one of the sons petitioned the court for a citation to compel them to account. Following the awarding of a citation a partial account only was filed, whereupon, pursuant to further petition, the court ordered the executors to enter a bond and also sell the mining rights within a stated time. Failing to comply with the order to furnish bond, the executors were removed and an administrator d. b. n. c. t. a. appointed, who proceeded to sell the property and filed his final account September 27, 1919. At the audit it was contended interest should be charged against the sons for the appraised value of the realty devised to them, from the date of their acceptance of the property at the appraised value, and also upon the $2,000 advanced to the

daughter. The appraised value of the property devised to the sons, as appears by the auditor's report, was less than the amount actually due them on final distribution; consequently, a balance was due each devisee.

The rule is that a legacy bears interest from the time payable under the terms of the will and, in absence of a provision to the contrary, interest begins to run from the expiration of a year after testator's death: Act of February 24, 1834, P. L. 83, sec. 51; but where the time of payment is deferred by testator, interest is not chargeable until the expiration of that time, unless the relation between testator and the legatee was such that the law infers an intention to pay interest: Hermann's Est., 220 Pa. 52; Gunning's Est. (No. 3), 234 Pa. 148. This, like all questions relating to the construction of wills, is one of intention and must be answered by reference to the provisions contained in the will. In the present will we find no express provision relating to the payment of interest. Under its terms the sons were required to account for the appraised valuation of the property in the final settlement of the estate. This requirement fixed the time at which payment was to be made. A final account was not possible until the executors had disposed of all property as directed by the will and this was not done until the year 1919. Testator's direction that the mining rights be sold within a reasonable time after his death did not contemplate a delay of several years before its sale and the final settlement of the estate. The delay, however, was explained on the ground that the executors expected to realize a better price by postponing the sale, which conclusion apparently was satisfactory to all parties in interest. Appellant evidently acquiesced in the delay, or at least made no objection to the executors deferring the time of sale, by bringing the matter before the orphans' court, although no reason existed to prevent her from so doing at any time after one year from the date of testator's death, if she believed her interests were being in any manner jeopardized.

The period of final settlement was thus delayed without objection from any party in interest; this action, however, can have no effect upon the intention of testator as indicated by the terms of the will, which contemplated distribution and payment of legacies as soon as all properties were disposed of. Until that time there could be no "consolidation" of the proceeds, as directed by testator, and, hence, no division of the whole into equal shares. We find no apparent intention to impose an interest charge on the property devised to the sons previous to the time fixed for distribution and for payment of legacies and, in absence of such express provision, and of any other reason for making an exception to the general rule, interest cannot be charged until the time of payment arrives: Gunning's Est., supra.

The decree of the court below is affirmed, at appellant's costs.