## IN THE MATTER OF THE ESTATE OF JOHN LEWIS, Deceased.

In The Kansas City Court of Appeals, May 1, 1922.

1. **WILLS: Legacies: Interest: Where Time for Payment of Legacy is fixed by Will, Interest is Due Only from Time Designated for Payment.** When the time for the payment of a legacy is fixed by will and there are no other controlling considerations, interest is due only from the time designated for payment of the legacy.

2. ———: ———: ———: **Under Common Law and Our Statute Where Time of Payment of Legacy is Not Fixed by Will, Interest is Allowable from One Year after Death of Testator.** Under the common-law rule, which is the same as our statute, section 237, Revised Statutes 1919, where no time of payment of legacy is fixed by will, the legacy will become due and payable at the expiration of a year from testator's death and it will draw interest from that date.

3. ———: ———: ———: **To Defeat Interest on Legacies after One Year it is Unnecessary That Will Contain Direct Terms Postponing Time of Payment.** In order to defeat interest it is not necessary that the will contain a provision specifically and in direct terms postponing the payment of the entire legacy to some later time, it being sufficient, it from all the terms and provisions of the will, it can be clearly seen that the legacies are not to be payable or due until some later time or contingency.

In re Lewis.

4. ———: ———: ———: Legatees Held Not Entitled to Recover Interest on Legacies from One Year after Death of Testator, as Same Could Only Draw Interest from Time Ultimate Payment was Fixed by Will. Where will directed executor to pay legacies as rapidly as funds came into his hands, the real estate to be treated as trust property untill all of the children attained their majority, and remainder of unpaid legacies at time of majority of youngest child to be then paid, *held*, legatees were not entitled to interest on legacies from one year after testator's death, personality and income of land being applied *pro rata* on legacies under section 237, Revised Statutes 1919, as soon as executor obtained same.

Appeal from the Circuit Court of Holt County.—*Hon. Alonzo D. Burnes,* Judge.

AFFIRMED.

*S. F. O'Fallon* and *R. B. Bridgeman* for respondents.

*Frank Petree* for appellants.

TRIMBLE, P. J.—The question herein is whether certain legatees in the will of John Lewis, deceased, are entitled to interest on their legacies. The controversy arose on exceptions to the final settlement of the executor, who allowed interest and figured same at the rate of six per cent on the unpaid portions of said legacies from one year after testator's death. Exceptors contended that the legatees were not entitled to interest. The probate court held that they were, and, overruling the exceptions, approved the final settlement. Exceptors thereupon appealed to the circuit court where it was held that the legatees were not entitled to interest. The executor and the legatees then appealed to this court.

The interest, if allowable, amount in the aggregate upon all of the legacies to the sum of $4725. No question exists as to the correctness of the amount of interest figured by the executor. The sole question is whether interest is allowable at all.

John Lewis died January 28, 1911. His will was duly probated, and the executor qualified, on February 1, 1911.

In the first paragraph of said will, testator provided that his just debts, funeral expenses, the expenses of last illness and of a suitable monument "be paid first."

The second paragraph gave to the widow the household goods, farming implements, certain stock and grain, and the sum of $500 "to be paid to her by my executor as hereinafter provided."

Paragraphs three to ten inclusive bequeath the legacies involved herein, the interest on which is the bone of contention between the parties. As these paragraphs are all worded exactly alike, except as to name of legatee and amount of legacy, we set out only the first of them in full, to-wit:

"Third. I give and bequeath to my daughter, Emma Babcock, the sum of Five Hundred Dollars ($500) to be paid by my executor as hereinafter provided."

The other legacies are as follows: To his daughter, Mary Annie Brown $600; to his daughter, Florence R. Dobbins $1800; to his daughter, Katie Mae Brown $700; to his unmarried daughter, Lydia Jane Lewis $3200; to his unmarried daughter, Susie Maggie Lewis $2800; to the Anderson grandchildren, minor heirs of a deceased daughter, Mrs. Anderson, and to their guardian if they be not of age as testator's death, the sum of $400. The legacies thus bequeathed amounted to the sum of $10,900 and the said legatees include all of testator's daughters and the heirs of a deceased daughter.

Paragraphs 11 and 12 of the will deal with matters having no bearing on or connection with the present controversy.

At the time of testator's death he owned 160 acres of land in section 8, Township 61, Range 37, on which he resided with his family. In addition thereto, he owned 180 acres of land in section 9, in said Township and Range.

In paragraph 13 testator devised to his wife 40 acres of the land in section 8 "to have and to hold the same until my son, John Logan Lewis, shall have reach the age of twenty-one years, and in case my said son, John

Logan Lewis, shall die before having reached the age of twenty-one (21) years, or before my death, then and in that event I desire that my said wife shall take the said land for and during her natural life." The remainder of said paragraph 13 gave the remaining 120 acres of land in section 8 to the widow "to have and to hold for and during her natural life."

In the next or 14th paragraph of said will testator *devised to his executor* "subject to the right, interest and estate hereinbefore given to my said wife, to have and to hold *in trust for the uses and purposes hereinafter expressed,* to-wit: When my said son, John Logan Lewis, shall have reached the age of twenty-one (21) years, if, in the judgment of my said executor, my said son, John Logan Lewis, is able and competent to care for the same, I desire that the said executor shall convey to the said John Logan Lewis (here follows the description of the 40 acres given in paragraph 13 to the widow until testator's son, John Logan Lewis, is 21) to have and to hold to him, the said John Logan Lewis, and his heirs forever; that at the death of my said wife, and when the said John Logan Lewis shall have reached the age of twenty-one (21) years, if, in the judgment of the said executor, the said John Logan Lewis is able and competent to care for the same, I desire that the said executor shall convey to the said John Logan Lewis, (here follows the description of the 120 acres of land in section 8, given to the widow for life by the latter part of paragraph 13), to have and to hold to him, the said John Logan Lewis, and to his heirs forever; but if, in the judgment of the said executor, at the time of the occurrence of the above events, the said John Logan Lewis is not competent and able to care for the said land and is liable to waste and dissipate the same, then and in that event I desire that the above conveyance of the said land shall be made by the said executor to the said John Logan Lewis, to have and to hold for his natural life only, with remainder over to his heirs." Then followed a provision that in case the wife should die before John Logan Lewis became

twenty-one, then the executor should rent same until the aforesaid son became of age. (The record does not disclose whether the widow is still living or not, but as it is disclosed that when John Logan Lewis became of age the 40 acres was deeded by the executor to him, and nothing is said concerning any disposition of the other 120 acres of the home place, we assume that the widow is still alive and enjoying her life estate therein.)

The 180 acres of land in section 9 was, by the 15th paragraph of said will, *devised to the executor* "to have and to hold *in trust for the purposes hereinafter expressed,* to-wit:—I desire that at my death the said executor shall take possession of the said real estate and shall rent, manage and care for the same until my son, George Dewey Lewis, shall reach the age of twenty-one (21) years, and that the net proceeds, after paying the expenses of caring for the same, including reasonable compensation to the said executor for his services in so doing, shall be held by him as part of my estate and distributed as hereinafter provided; and when my said son, George Dewey Lewis, shall have reached the age of twenty-one (21) years, I desire that my said executor, if in his judgment the said George Dewey Lewis is able to care for the same, shall convey the said real estate to the said George Dewey Lewis, to have and to hold to him and his heirs forever; but if in the judgment of the said executor, the said George Lewis is not able and competent to manage the same, and is liable to dissipate and waste it, then and in that event I direct that the said executor shall convey the said real estate to my said son, George Dewey Lewis, to have and to hold for and during his natural life only, with the remainder over to his heirs."

The 16th and 17th paragraphs of said will are as follows:

"Sixteenth. I direct that my executor hereinafter named shall at my death take possession of all my personal property, and that after having given to my wife the stock, household goods and farming implements

given to her in the second clause of this will, he shall convert the remainder into cash and out of the proceeds thereof, together with the income derived by him from the real estate described in the 15th clause of this will, I desire that he shall pay, first, my debts and expenses as provided in the first clause herein, and next, the specific legacies provided for in this will as follows: He shall first pay to my said wife the sum of Five Hundred Dollars ($500) given to her in the second clause of this will; next he shall, as quickly as possible after my death, pay upon each of the other legacies hereinbefore provided for, the sum of Two Hundred Dollars ($200) and the remainder of said legacies shall be paid by him as rapidly as funds may come into his hands distributing such funds *pro rata* upon the said legacies.

Seventeenth. If the personal property in the hands of my executor subject to distribution, together with the income from the real estate herein devised to him for that purpose, shall not be sufficient to pay the legacies herein provided for in full, then I hereby direct that my said sons, John Logan Lewis and George Dewey Lewis, shall pay to the executor whatever dificiency there may be, each paying one-half of such deficiency; and I hereby direct that the payment of such deficiency shall be made a charge and lien against the land herein devised to and for my said sons respectively, and that my executor, in case of a failure by either or both of my said sons to pay to him such deficiency, shall have the power to sell enough of the real estate herein devised to the son or sons so failing, to make up and pay the said deficiency.''

The executor's first annual settlement, made February 15, 1912, shows that he paid all debts of the estate, delivered to the widow the specific property given to her in the will, paid her in the $400 statutory allowance and also the $500 legacy given to her in the will. Thereafter he paid on each legacy the sum of $200 as directed by the 16th paragraph of said will and used the remaining personalty in paying a further small sum on said legacies. The executor took charge of the 180

acres devised to him in trust until testator's son, George Dewey Lewis, became 21, and rented the same out, as directed by the 15th paragraph of said will, and as fast as proceeds came into his hands from the rent thereof he applied the same *pro rata* to the payment of said legacies as directed by the 16th paragraph of said will. From his second annual settlement up to his ninth annual and final settlement made in February, 1920, the only business transacted by the executor was the renting and collecting the income from the 180 acres and applying the net proceeds *pro rata* to the payment of said legacies.

At said final settlement in February, 1920, the two sons having become 21, there remained yet due on the legacies, to pay the amounts specified in the will, the sum of $2937, and, if interest were allowable on them, the further sum of $4725 as interest was needed. The executor demanded these sums of the two sons. They at once paid the $2937 without objection, but paid the $4725 interest under protest with the understanding and agreement that, if it was adjudged interest was not allowable, the last-mentioned sum would be returned to the sons. As heretofore stated, the executor deed to John Logan Lewis the 40 acres in section 8, and said executor also deeded to George Dewey Lewis the 180 acres in section 9 which he was to get when he was 21 under paragraph 15 of the will.

As we understand it, there is no contention that the executor failed to pay any legacy, or to pay *on* any legacy, when he had proceeds in his hands for that purpose; but, as fast as income was derived from the land held by him in trust for that purpose, he applied it *pro rata* to the payment of said legacies. The question is whether the legatees are entitled to claim interest on the balance of their legacies, after the $200 was paid on each, from the date of one year after testator's death, for and during the time the legatees had to wait for the payment thereof because of a lack of funds in the executor's hands prior to the sons' attaining their majority?

Interest, in the sense in which the word is used in the connection here considered, "is the compensation allowed by law for the deprivation of a legacy or distributive share beyond the period when it is payable according to the terms of a will or statute." [2 Woerner on Adm'n (2 Ed.), sec. 458; 40 Cyc. 2093; Good Samaritan Hospital v. Mississippi Valley Trust Co., 137 Mo. App. 177, 184.]

The phrase "when it is payable according to the terms of a will" is important, for it is for the deprivation of the legacy beyond the time when it is *payable* or becomes legally due, that interest is allowed. And if it can be gathered from the will *when* the legacy is *payable,* then that is the date at which the legacy becomes legally due. For a pecuniary legacy is a claim against the estate which is established by the will. And a testator, in bestowing a legacy, is disposing of his own and has a right to do it upon his own terms, and whatever terms he imposes in his will must be followed. He can provide that a bequest shall go into effect immediately upon his death or he can *postpone the payment* thereof to some later date or until the happening of some specified event or contingency. If the will creates a legacy without disclosing testator's intentions as to *when it shall be paid,* then the law, with certain exceptions, says the legacy will become due and payable at the expiration of a year from testator's death and it will draw interest from that date. [Davison v. Rake, 16 Atl. 227; 18 Am. & Eng. Ency. of Law (2 Ed.), 793; 40 Cyc. 2094; 2 Woener on Admn. (2 Ed.), sec. 458.] This has been the law in Missouri heretofore. [In re Catron's Estate, 82 Mo. App. 416, 421; May v. Priest, 13 Mo. App. 555, S. C. 87 Mo. 180; Asbury v. Shain, 191 Mo. App. 667, 675; Good Samaritan Hospital v. Mississippi Valley Trust Co., 137 Mo. App. 179, 184.] An such common-law rule has now been enacted into a statute, though this was not done until April 9, 1917, long after the legacies herein were given and the will established. [See section 246, Laws 1917, p. 99, now section 237, Revised Statutes 1919.]

210 M. A.—6

But, as stated, if the will discloses when the legacy is to be paid, then it must control. "The purpose at last in all such cases is to follow the will of the testator." [In re Catron's Estate, 82 Mo. App. 416, 419.] And it is only from the time the legacy becomes due or is payable that interest could be said to accrue. The very terms of the definition of interest, hereinbefore quoted, requires this. "Until the legacy is payable there is no fund to produce interest." [Good Samaritan Hospital v. Mississippi Valley Trust Co., 137 Mo. App. 179, 184.] "When the time for the payment of a legacy is fixed by the will and there are no other controlling considerations, interest is due only from the time designated for payment of the legacy." [28 R. C. L. 354.] Of course, the rule of law as to interest being allowable from one year after the death of the testator, governs unless the will provides that interest shall accrue sooner or fixes the time of payment of the legacy later than the legal rule date.

It is true, where a will creates a legacy with nothing therein to indicate *when* it shall be paid, nor postponing the payment thereof until a future date or the happening of some later contingency, the time when the legacy is due or payable is not affected by such expressions in the will as that it shall be paid "as soon as possible" or "when practicable," or by other provisions concerning the convenient and profitable management of the estate. [40 Cyc. 2095; 2 Woerner on Admn. (2 Ed.), sec. 458; Griggs v. Veghte, 19 Atl. 867; In re Williams' Estate, 44 Pac. 809; Welch v. Adams, 25 N. E. 34.] Nor, in such case, is the right to interest affected by the condition of the estate whereby funds are not available to pay a legacy at the time it is due. [40 Cyc. 2103; In re Ervings' Estate, 92 N. Y. Supp. 1109.] Likewise, mere unproductiveness of the estate does not affect the right to interest, for the legatee is in the same position as a creditor, and is entitled to interest at the legal rate for such time as he is kept out of that which the will has said he should have. [40 Cyc. 2104; In re Rutherford, 89 N. E. 820.] How-

ever, by this is meant only that such expressions, of themselves and without more, are not sufficient to defeat the right to interest on the legacies for the time beyond which they are due and payable. As said in Hoagland v. Extrs. of Schencke, 16 N. J. L. 370, 376, such general terms "without other matter to give them point and construction, can be regarded as little else than a kind of formula to which no distinct effect or operation should be given." This, however, does not mean that, in order to defeat interest, the will must contain a provision specifically and in direct terms postponing the payment of the *entire* legacy to some later time than the law provides where there is an absence of testamentary direction. It is sufficient if, from all the terms and provisions of the will, it can be clearly seen that the legacies are not to be payable or due until some later time or contingency. As said in Welch v. Adams, 152 Mass. 74, 80, the general rule as to interest does not apply where specific directions are given by the will nor "where a different intention is to be inferred from its provisions." [See, also, Loring v. Woodward, 41 N. H. 391, 394.] And, as said before, it is only from and after the time the legacy is directed to be *paid,* or becomes due, that interest can be claimed. (In this connection, it would seem that if a testator can postpone the payment of an *entire* legacy to some later time than the law otherwise fixes, he can, if he chooses to do so and directs it in his will, provide that the legacy is to be paid throughout a certain period as fast as funds are received for that purpose, and that it shall be paid in *full,* or in other words become *fully due,* upon the occurrence of some later event, and if the former—*i. e.,* postponement of payment of entire legacy—will defeat interest, the latter should also, provided the will's directions as to the conditional and ultimate payments are strictly followed.) Interest is payable on legacies "only from the time at which the principal of the legacies becomes actually due. It is important, therefore, in the first place, to ascertain the precise time at which the principal becomes payable, since interest cannot begin

to accrue before that time.  .  .  .    With respect to general pecuniary legacies, when the time of payment is named by the testator, there is no general rule more uniformly laid down by the elementary writers, or better settled by adjudged cases, both in this country and in England, than that such legacies do not carry interest before the arrival of the appointed period of payment, notwithstanding the legacies are vested.'' [Custis v. Adkins, Admr. of Potter, 1 Houston (Del.) 382, 395.] And it was accordingly held that no interest was allowable. It is true, in that case, the will provided that the legacies should not be paid until the legatees arrived at their majority, and they were not made a charge upon land. But nevertheless, the principle that the legacies do not begin to draw interest before they are made payable by the terms of the will is upheld.

It would seem therefore that the question of whether the legatees herein are entitled to interest depends on the application of the above principles to the will involved herein.   Does the will in the case before us bequeath these legacies in such terms as that there is no later time than that fixed by law when they become payable or due, and hence the law steps in and says the legatees are entitled to interest from one year after the death of testator?   Or can it be seen from all the terms of the will that while the legacies are created at once and become vested in that sense, the will nevertheless contemplates that they are not *payable,* and hence are not legally due, until a later date?   If so, it would seem that interest would not be allowable, since interest is not allowed except for the deprivation of the legacies beyond the time when they are ''payable according to the terms of the will.''

It will be observed that the will herein does much more than merely create the legacies, with nothing said as to time of payment.   It affixes to each the provision that it is *''to be paid* by my executor *as hereinafter provided.''*   Another significant feature is that the two sons, who are minors and therefore would seem to be entitled to testator's immediate consideration on that account,

*do not get anything* from the estate until they become of age. And while the deficiency of the legacies, if there be any when they do become of age, is made a charge upon the land, it is made so upon *all* of testator's land, but that charge is not to be enforced thereon until the sons become of age, and in the meantime the sons get nothing out of the rents of said land, but the rents are to be used to pay the legacies "as rapidly as funds may come into his (the executor's) hands, (he) distributing such funds *pro rata* upon the said legacies." The principle that interest should be paid on the legacies because it is presumed that the estate will derive income from the land, and the sons ought not to get it at the expense of the legatees, can therefore have no application. Here the entire estate was a trust fund in the hands of the executor (over which the sons had no control whatever), to be rented by the executor for the *specific purpose* of paying the legacies, and every dollar of such income, less expenses, went to pay the legacies, the sons getting nothing whatever for eight or nine years or until they were twenty-one.

After specifying, as heretofore stated, that the legacies are to be paid "as hereinafter provided," the testator, in the 15th clause of his will, directs the executor to take possession of and rent said land, and the net proceeds "shall be held by him *as part of my estate and distributed as hereinafter provided*" during the time elapsing until his sons become of age. Testator then provides that said executor shall, out of the net personalty in his hands and the income from the real estate, pay first the $500 legacy to the widow, then "as quickly as possible after my death *pay upon* each of the other legacies herein provided for the sum of Two Hundred Dollars ($200) and the *remainder* of said legacies *shall be paid* by him *as rapidly as funds may come into his hands, distributing such funds pro rata upon the said legacies.*" If this does not *postpone* the payment of the balance of said legacies, and consequently the right to claim interest thereon, until such time as funds from the

income of said estate come into the executor's hands during the time the sons are under 21, it is hard to see what is its effect or meaning. Then the testator, realizing that the provisions he has made for the payment of the legacies might be insufficient, provided, in the 17th paragraph of his will, that if the personal property in the hands of the executor "together with the income from the real estate herein *devised to him for that purpose,* shall not be sufficient to pay the legacies herein provided for in full," the two sons, when they arrive at twenty-one, shall pay whatever "deficiency there may be" each paying one-half thereof, and, in case of a refusal on their part to do so, such deficiency *then* existing becomes a charge on all the land willed to them, which was *all* of testator's land, and the same could then, and not before, be sold to pay such deficiency.

Under the above provisions of the will when did the legacies mature or become payable? As fast, and only so fast, as funds came into the hands of the executor from the estate to pay them, until the time arrived when the sons became of age, and then the legatees were entitled to receive the unpaid balance of their legacies. Could the sons have paid the legacies sooner? They could not, since the title did not vest in them until they were twenty-one, and besides, being minors, they could not exercise any choice in the matter even if they wanted to. Neither could the executor pay the any sooner than he did, for he was bound by the trust created in the will and could not sell the land to pay the legacies until the sons became twenty-one and refused to pay them. Could the legatees rightfully expect or demand the payment of their legacies any sooner than they were paid? They could not, because the will provided *when,* and *in what manner,* and the *source* from which, they should be paid. The only thing the legatees could rightfully demand was that they be paid *pro rata* as rapidly as funds came into the executor's hands, and, that they be paid the balance upon the sons' attaining their majority. As there was no failure on the part of the executor to do this, it is

not seen how the legatees could claim interest for the time prior to the period at which the will itself said they should be paid. "General legacies, payable out of the proceeds of real property, bear interest from the date when the legatees were in a position to demand payment, though the legacies were not practically capable of payment at that time." [In re Michaelis' Estate, 179 N. Y. Supp. 901, 903.]

In Parkhurst v. Ginn, 228 Mass. 159, 174, it is said: "It is the settled rule that 'Interest is payable upon pecuniary legacies from the time when, by the terms of the will or by the rules of law, they become due and ought to be paid.' [Kent v. Dunham, 106 Mass. 586, 590.] These legacies are not payable at a fixed calendar date either by the will or by the law. They become due only *upon the happening of the contingency that principal of the estate becomes available therefor.*" (Italics ours). The legacies referred to in the above quotation were given by the will in these words, "If and when (after the payment of certain other gifts and legacies specified) principal of my estate becomes available for distribution." And the court held that interest was not allowable prior to the arrival of that time, but was allowable after that. In the case of Kent v. Dunham, cited in the quotation, the legacies were "to be paid as soon as the same can conveniently be done from sales and collections of my property without sacrifice, but the same to be paid within three years from the date of the probate of this will." (p. 587). The court held that the provision as to payment of legacies "as soon as conveniently may be" etc., did not fix the time of payment, but that the provision that they were to be paid "within three years," etc. did, and that the legacies "were not absolutely due until the end of that period, and that interest should be computed accordingly." In other words, by postponing for three years the time of payment of the legacies, the the will postponed the liability for the payment of interest until the end of that time. We do not think the two above quoted provisions in the respective wills in-

volved in the two cases just cited differentiate them from the one at bar. The principal involved is the same namely, that the legatee is not entitled to interest *prior to the time fixed in the will for the payment of the legacies,* and that is the time when they become legally due so as to be entitled to draw interest according to the legal rule in regard to interest. "The rule is that a legacy bears interest from the time (it is) payable under the terms of the will, and, in absence of a provision to the contrary, interest begins to run from the expiration of a year after the testator's death . . . ; but when the time of payment is deferred by testator, interest is not chargeable until the expiration of that time, unless the relation between testator and the legatee was such that the law infers an intention to pay interest. . . . This, like all questions relating to the construction of wills, is one of intention, and must be answered by the reference to the provisions contained in the will." [In re Hoskinson's Estate, 112 Atl. 125, 126.] In Van Rensselaer v. Van Rensselaer, 115 N. Y. 207, 215, the will bequeathed a legacy "to be paid by my executors when it shall be convenient for them, without regard to the time fixed by law, out of the moneys derived from the sale of the Van Schaick farm" etc. The court held that the legacy became due when proceeds were derived from the sale of the Van Schaick farm, and that the phrase "when convenient for them" did not warrant the executors in delaying the payment of the legacy after that time, but as they had ample proceeds in their hands from that source at a certain time but did not pay the legacy, interest was due, not from one year after issue of letters testamentary, but from the time the proceeds of the Van Schaick farm came into their hands. The court say that the allowance of interest after one year "is the rule where no time of payment is fixed by the will, and the legacy then becomes due. But the testator set aside the legal rule by the very terms of his bequest," and for this reason the court allowed interest only from the time the legacy was made payable by the receipt of funds

for that purpose. It is true that, in the cases cited above, the provision as to time of payment applied to the *whole* of the legacies, while in the case at bar the legacies became partially due at one time and the balance became due at another, but this does not affect the question of interest since the directions of the will, as to the payment of the legacies as fast as the funds became available, were strictly obeyed, and when the time came for the payment of the balance of the legacies, i. e., when the youngest son became of age, that was complied with also.

As we understand it, where the *very terms of the will itself* fix the time of payment of the legacy, it becomes due and payable then, and the legatee is not in a position to claim payment sooner and for this reason cannot claim interest on it sooner than that time. To say that because a part is made payable, therefore all of the legacy becomes due, and should therefore draw interest from one year after testator's death, is to ignore the plain provisions of the will which show that only part is made payable and the rest is to become due only as fast as funds arise for that purpose, and does not ultimately and at all events become due until the youngest son becomes of age. The rule as to interest on legacies is not so inflexible that, notwithstanding the provisions of this will, interest is to be given to the legatees as a purely legal incident to their legacies. To do this, is to say that testator must, as a matter of law, be conclusively presumed to have made the legatees' bequests, absolutely due at the end of a year from his death, and legatees are therefore entitled to interest from that date, even though testator has expressly provided that the legacies shall not become unconditionally due until his youngest son becomes of age, and until then the sons are not given any share whatever in the estate and the charge upon the land for the ultimate payment of the legatees cannot be demanded by the legatees or be enforced by any one until that time arrives.

We are of the opinion that the judgment of the circuit court is right and should be affirmed. It is so ordered. All concur.