| 78 | 40 |
| 176 | 127 |

## Schott's Estate.

1. A testator, after providing for his wife, directed that no distribution of his estate should be made until five years from his death, and not then unless his wife were dead. He gave some legacies, and directed that the income of his estate should be paid in sixth parts to certain legatees until the time for distribution of his estate. At the time of the distribution of the corpus of his estate, he ordered it to be divided into six parts; one part he gave to his son Guy, and in case of his death without issue before the distribution, he gave it over, with the proviso that if he died before the time of distribution without issue, $5000 in Allegheny bonds should be paid to Guy's wife. Guy died before the time of distribution, his wife surviving. *Held*, that she was not entitled to the $5000, until the time of the distribution.

2. The legacy to Guy's widow vested at his death, but its payment was suspended until the time fixed for the distribution of the testator's estate.

3. Every sentence and word in a will must be considered in forming a judicial opinion upon it, and the intention of the testator from the words of a will taken altogether, must govern its construction.

4. The general intent of a will being ascertained, a particular inconsistent intent will be overlooked.

January 13th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON, and WOODWARD, JJ.

Certificate from Nisi Prius. No. 339 to January Term 1872.

This was an amicable action and case stated, in which Marian G. Schott was plaintiff and the executors, &c., of James Schott, deceased, were defendants. The case stated exhibited as follows:—

James Schott died on the 23d of October 1870, having made his will, dated December 12th 1866, with a codicil dated December 23d 1868.

By his will he gave all his estate to his executors in trust, to be disposed of as follows:—

He directed that his wife and son, Guy Bryan Schott, should respectively have, during life, houses designated in the will. The next clause of the will is:—

"Item. It is my will that no division or distribution of my estate shall be made until after the expiration of five years from the day of my death, and not then if my wife shall be living, and not until after the death of my wife."

He then directed that his executors should pay to his wife such part of the income for life as she might require; to his son, Guy Bryan, he gave $1200 per annum "until there shall be a division of my estate." He then directed annuities to certain grand-children "until there shall be a division of my estate." The will then proceeded:—

"It is my will that the remainder of the net income of my estate shall be divided into six equal parts." He gave one of these sixth parts of the income to each of several classes of beneficiaries, "until the time arrives for the distribution of my estate."

The disposition of one of these sixth parts of the income was as follows, viz.:—

[Schott's Estate.]

" One other sixth part to my son Guy Bryan Schott, and in case of his death before the division of my estate, to his lawful issue, if he shall have any, but in default of lawful issue, to be discontinued and remain part of my estate, but if his wife, Marian, shall be living, I direct my executors to pay her five hundred dollars, she being comfortably provided for in her own right."

The will further provided:— .

" After the expiration of five years, and when the time shall arrive for the division and distribution of my estate, as hereinbefore provided for, it is my will that the whole of my estate that shall remain after the aforesaid legacies are paid and provided for, shall be disposed of as follows:"

He then gave two sixth parts to each of two classes of grandchildren, in the manner specified in the bequests, and further directed, "that the whole of the remainder of my estate, real, personal and mixed, shall be divided into four equal parts, and disposed of as follows, viz.:" One fourth part to go, as is provided in the will, to each of three daughters for life, with power to dispose of the same by will, or, in failure of making wills, to go over.

He then provided as follows:—

" One other fourth part to my son Guy Bryan Schott, and in · case of his death before the distribution of my estate, to his lawful issue, if he shall have any; and in default of lawful issue his interest shall cease, and his share shall be equally divided between his sisters, Charlotte S. Engles, Martha B. Whitney, and Maria L. Hand, and added to the amount they may otherwise be entitled to from my estate; but if my said son shall be living when the time arrives for the distribution of my estate, his share shall be paid to him and at his own disposal. In the event of the death of my son G. Bryan before the distribution of my estate, leaving no lawful issue, and his wife Marian shall then be living, I hereby authorize and direct my executors to pay her five thousand dollars, par value, of my Allegheny county five per cent. bonds; she being otherwise comfortably provided for in her own right."

Guy Bryan Schott, a son of the testator, died on the sixth day of September 1871. The plaintiff is his widow. The executors of the will of James Schott paid to her, after her husband's death, the legacy of $500, mentioned in the said will.

The plaintiff contends that she was entitled to receive also the $5,000 Allegheny county five per cent. bonds, mentioned in the said will on the day of the death of her husband. The defendants contend that she was not so entitled, and will not be entitled to receive the same until the expiration of the time at which it is provided by the said will that the estate of the testator shall be distributed, viz.: five years after his death, provided, the plaintiff should then be living.

" If the court should be of opinion that she was entitled to

[Schott's Estate.]

receive the said $5000 Allegheny county five per cent. bonds upon the said sixth day of September 1871, judgment is to be entered for the plaintiff, for the said sum of $5000, payable in the said bonds, together with all the interest that has accrued, and been received thereon, since the said sixth day of September 1871.

"If the court should be of opinion that the said sum is not so payable to the plaintiff, then judgment is to be entered for the defendants, without prejudice to the plaintiff's right, or that of her legal representatives, to institute other legal proceedings after the expiration of five years from the death of the testator, if she or they shall then be lawfully entitled so to do."

Mr. Justice Mercur, at Nisi Prius, entered judgment on the case stated for the defendants, delivering the following opinion:—

"James Schott died on the 23d day of October 1870, having first made his last will and testament, wherein he provided, *inter alia*, that, 'in the event of the death of my son, G. Bryan, before the distribution of my estate, leaving no lawful issue, and his wife Marian shall then be living, I hereby authorize and direct my executors to pay her $5000, par value, of my Allegheny county five per cent. bonds.'

"G. Bryan Schott, the son of the testator, died on the 6th day of September 1871, before distribution of the estate was made; but whether he left lawful issue is not stated, although the counsel on both sides have argued the case as if he had left none, and it appears that a legacy of $500 has been paid to his widow that she would not have been entitled to receive in case he had left issue. The plaintiff is his widow, and claims she was entitled to the said bonds upon the death of her husband. The defendants deny her right to demand them until the distribution shall be made.

"Looking at the foregoing extract only, the plaintiff's construction would seem to be the correct one. In the event that 'his wife Marian shall then be living' would indicate 'then' as pointing to the time of her husband's death. The rule, however, by which a will is to be construed, requires us to examine the whole instrument. Every sentence and word in a will must be considered in forming a judicial opinion upon it: Turbett *v.* Turbett, 3 Yeates 187. The intention of the testator drawn from the words of a will, taken altogether, must govern in its construction: Lynn *v.* Downes, 1 Yeates 518. The intention of the testator, said Yeates, Justice, in Findlay *v.* Riddle, 3 Binn. 149, has always been deemed the first great leading fundamental rule in the construction of wills. It is true, the intention of the testator shall not govern in the construction of a will where the rule of law overrules the intention. This is said to be reduceable to four instances: 1. Where the devise would make a perpetuity; 2. Where it would put the freehold in abeyance; 3. Where chattels are limited in inheritances; and, 4. Where a fee is limited on a

fee: 2 Dallas 244. To this list may be added the case where the Act of Assembly of 27th April 1855, makes that a fee-simple estate which the testator intended should be a fee-tail only. None of these exceptional cases, however, interpose in this case to prevent full effect being given to the testator's intention. It is the general intent of a will which controls in its construction. Hence, the general intent being first ascertained, a court will, in order to give effect to such intent, overlook a particular intent inconsistent therewith: Findlay v. Riddle, 3 Binn. 150.

"Tested by these rules, and examining the whole will, we discover the great controlling idea and intention of the testator to be as expressed in the third item, 'that no division or distribution of my estate shall be made until after the expiration of five years from the day of my death.' Within those five years certain legacies are made payable out of the income from his estate; but no portion of the principal shall be disturbed. After having made a disposition of the income to his several descendants, and persons intermarried therewith, in each case referring to the subsequent distribution of his estate, he says: 'After the expiration of five years, and when the time shall arrive for the division and distribution of my estate, it is my will that the whole of my estate, real, personal, and mixed, shall be disposed of as follows.' Then, after making some provision for several of his grandchildren, he again recurs to a general distribution in these words: 'After the expiration of five years, and when the time shall arrive for the division and distribution of my estate, as hereinbefore provided for, it is my will that the whole of my estate that shall remain after the aforesaid legacies are paid and provided for shall be disposed of as follows.' Then follow other legacies to several other of his grandchildren, after which the testator says: 'It is my will that the whole of the remainder of my estate, real, personal and mixed, shall be divided into four equal parts.' The income from one part thereof is given to each of his three several daughters during life, with power to dispose of the said part by will. The other fourth part thereof is given 'to my son Guy Bryan Schott; and in case of his death, before the distribution of my estate to his lawful issue, if he shall have any; and in default of lawful issue his interest shall cease and his share shall be equally divided between his sisters. * * * But if my son shall be living when the time arrives for the distribution of my estate, his share shall be paid to him and at his own disposal.' Then immediately follows the clause first quoted, under which the plaintiff rests her right to recover upon the death of her husband. It appears from the portions of the will recited that no general distribution of the property, no division of the principal, was to be made until five years after the death of the testator. Neither son, nor daughter, nor grandchild, was entitled to receive one dollar of the principal within the five years. Within that time

[Schott's Estate.]

the legacies given to all of them were to be paid out of the income only. If the construction claimed by the plaintiff be correct she stands upon higher ground than either of the legatees in whose veins the blood of the testator flows. Within the five years she can withdraw a portion of the principal of the estate: none of his descendants can. The general intent of the will leads to an entirely different conclusion. To give effect to that general intent, we say the true reading of the will is, 'in the event of the death of my son G. Bryan before the distribution of my estate, leaving no lawful issue, and his wife Marian shall be living at the time of said distribution.' May we so change the language to effectuate the general intent? Words may be added, altered, or rejected, for that purpose: Duffield *v.* Morris, 4 P. L. J. 79. The construction claimed by the plaintiff destroys the symmetry of the will, and would produce results inconsistent with the whole spirit of the distribution of the property proposed.by the testator; while the other view, that the plaintiff is not entitled to the bonds until the general distribution of the property shall be made at the expiration of five years after the death of the testator, harmonizes all his dispositions, and accomplishes all his intentions. We may, therefore, safely conclude that the latter is the true will of the testator: Earp's Will, 1 Pars. 457.

"Judgment is therefore to be entered for the defendants, without prejudice to the plaintiff's right, or that of her legal representatives, to institute other legal proceedings after the expiration of five years from the death of the testator, if she or they shall then be lawfully entitled so to do, according to the case stated."

The plaintiff took a writ of error, assigning for error the entry of judgment for the defendants.

*J. V. Darling* and *G. W. Biddle*, for plaintiff in error.—The legacy of $5000 was specific; Hawkins on Wills 301; Ludlam's Estate, 1 Harris 189; Blackstone *v.* Blackstone, 3 Watts 337. The legacy having become vested upon the death of the son, no general intent as to the distribution of the corpus can make a different period of vesting: Hassanclever *v.* Tucker, 2 Binn. 525.

*Porter*, for defendant in error.

Judgment was entered in the Supreme Court, January 18th 1875,

PER CURIAM.—We think that the legacy of the Allegheny county bonds to the widow of Guy Bryan Schott vested at the death of Guy Bryan Schott without issue, but that its payment was suspended until distribution made according to the terms of the will of James Schott. The opinion of the judge at Nisi Prius sufficiently vindicates his judgment, and we affirm it, therefore, for the reasons given by him.          Judgment affirmed.