## Osborne's Petition

*E. L. Davies* and *Kelley & Kelley,* for petitioner.

Smith, P. J., May 7, 1934.—The present petition for a declaratory judgment is presented by Laverne R. Osborne, a beneficiary named in the last will and codicils of his mother, Harriet L. Osborne, deceased.

Said will and two codicils, after the introductory paragraphs which declare it a testamentary disposition of her entire estate, real, personal, and mixed, provide as follows:

"Item. I give, devise and bequeath to my son, Laverne R. Osborne, all my estate, real, personal and mixed, whatsoever and wheresoever, to have and to hold the same during his lifetime; provided also, and my further will is, that upon the marriage of my said son to any other woman than Lottie Mitchell, then in such case the estate so given, devised, and bequeathed to him for and during his lifetime, shall upon the consummation of such marriage, become his absolutely, his heirs, and assigns forever. But if he marries the said Lottie Mitchell, aforesaid, then the estate so intended for him, my said son, I hereby give, devise and bequeath the same to his heirs, the same to be equally divided among such child or children, share and share alike, at their respective ages of twenty-one years, for him, her or them to have and to hold the same absolutely and forever, their heirs and assigns; and in case of the decease of my said son, Laverne R. Osborne, without lawful issue, then, in such case, I give, devise

and bequeath the same to The Home for the Friendless, located at (Green Ridge) in the City of Scranton, County of Lackawanna and State of Pennsylvania, for it to have and to hold the same absolutely and forever."

The real estate is described as follows: . . .

"Item. If at any time it be deemed advisable by my executor hereinafter named or become necessary to carry out the provisions hereof; or in order to benefit my estate, to convert the same into money; then, and for that purpose, I do hereby authorize and empower my said executor hereinafter named, and the survivor of him, to sell and dispose of all my said real estate, either by public or private sale or sales, for the best price or prices that can be gotten for the same, and by proper deed or deeds, conveyances, or assurances in the law, to be duly executed, acknowledge, and perfected, to grant, convey and assure the same to the purchaser or purchasers thereof in fee simple.

"Lastly, I do hereby nominate, constitute and appoint my esteemed friend and neighbor John O. McKinney, of the Township of Franklin, Susquehanna County, Pennsylvania, executor of this my last will and testament; and do declare these presents only to be and contain my last will and testament.

"In witness whereof, I Harriet L. Osborne, the testatrix, have to this, my will, written on four sheets of paper set my hand and seal, this ninth day of August, A. D. 1917.

"HARRIET L. OSBORNE.    (Seal.)

"I, Harriet L. Osborne, the within named testatrix, do hereby make and publish this codicil, to be added to my last will and testament, bearing date the 9th day of August, 1917, in manner following, to wit: And whereas in my last will I have appointed John O. McKinney, executor thereof, I now hereby appoint in his stead, George Campbell, Jr. In witness whereof, I have hereunto set my hand and seal, this 15th day of February, A. D. 1919.

"HARRIETT L. OSBORNE.    (Seal.)

*"Codicil*

"Whereas, I Harriet L. Osborne, did on the ninth day of August, A. D. 1917, make my last will and testament. I do now by this writing add this codicil to my last will, to be taken as a part thereof.

"I order and direct that no timber be cut on lands described in said will, except down and dead timber or for repairing or replacing buildings on said premises, until such time as the heirs of my son Laverne R. Osborne become of age and take possession of said lands or the same is converted into money by my executor herein named.

"In witness whereof, I Harriet L. Osborne, the testatrix, have to this codicil, set my hand and seal, this eighteenth day of November, A. D. 1919.

"HARRIET L. OSBORNE.    (Seal.)"

Besides the foregoing, the petitioner sets forth other jurisdictional facts as follows:

(*a*) The death of testatrix on November 25, 1919.

(*b*) The appointment on December 15, 1919, of the petitioner, Laverne R. Osborne, as administrator c. t. a. of her estate, and that he is now such.

(*c*) That the petitioner married the Lottie Mitchell named in the will above quoted, said marriage taking place prior to the death of testatrix, and that both still survive as husband and wife.

(*d*) That the petitioner, Laverne R. Osborne, is the father of Harry Osborne, born July 15, 1919, and five other younger children, by his wife Lottie Osborne, née Mitchell; all now surviving, the names and date of birth of the five being:

Pearl, August 13, 1921; James, July 27, 1923; Edith, October 3, 1925; Laverne, May 29, 1927, and William, August 26, 1930; all living with their parents in Hallstead Borough, Susquehanna County, Pa.

(e) That the testatrix died seized of the real estate described and located as previously designated in this opinion, of which no disposition has been made, but which remains as at the decease of testatrix.

(f) That the "Home for the Friendless" named in the will of testatrix is located in Scranton, Lackawanna County, Pa.

(g) That the said Laverne R. Osborne, his said minor children, and the Home for the Friendless, are all the parties interested in said real estate under the terms of the will of testatrix.

(h) That dispute as to the title of said real estate exists as between the beneficiaries named in said will as to in whom the title thereof is vested.

Wherefore, the petitioner prays for relief from this uncertainty of title by way of a declaratory judgment and such further relief as may be deemed proper.

On September 5, 1933, Melvin Kelly, a practicing attorney of the local bar, was appointed guardian ad litem of all six minors.

It appears that due service on or acceptance by all of said parties of the present rule has been made, all are regularly in court, and at the argument all were represented except the Home for the Friendless.

## Discussion

In orderly arrangement for discussion, the first question to be considered is the condition attached to the devise by testatrix "to my son Laverne R. Osborne all of my real estate, real, etc. . . . . during his lifetime", which further provides ". . . that upon the marriage of my said son to any other woman than Lottie Mitchell . . . the estate so given, devised . . . shall upon the consummation of such marriage become his absolutely, his heirs and assigns forever; but if he marries the said Lottie Mitchell aforesaid, then the estate so intended for him my said son I hereby give, devise and bequeath the same to his heirs . . ."

Does the marriage of the son, Laverne R. Osborne, to the said Lottie Mitchell effect a forfeiture of his right under his mother's will?

This provision comes within the terms of testamentary condition in restraint of the marriage of Laverne R. Osborne, the devisee named, i. e., his choice of and alliance with the person who should become his wife.

The extent and limitation of the right of a testator or testatrix in disposition of his or her estate by will is well expressed by Criswell, J., in Justus' Estate, 5 D. & C. 749, 750, viz.:

"In Pennsylvania the right of a man [or woman we add] to do as he [or she] will with his own has always been liberally construed. Accordingly, a donor, not under any obligation to give, may give with such conditions as he pleases, subject only to the restriction that the conditions shall not be clearly illegal": citing Stewart's Estate, 253 Pa. 277, and Holbrook's Estate, 213 Pa. 93.

Conditions in absolute restraint of marriage are regarded as unreasonable and contrary to public policy, and therefore void: 28 R. C. L. 322, and citations in note, including Commonwealth v. Stauffer, 10 Pa. 350; and although the restraint be not general it will not be upheld if it is too rigid and restrains the choice of mate unreasonably: 28 R. C. L. 322, and note.

It is unnecessary to recite the history and development of these principles; it is sufficient here to note that they are well established by the Pennsylvania courts.

While our research does not disclose a judicial interpretation in Pennsylvania of a restraint such as that at bar, there may be cited several sufficiently analogous to support our conclusions, such as Bruch's Estate, 185 Pa. 194, where a bequest of income to Elizabeth Hamlin "as long as she remains single bearing the name of Elizabeth Hamlin", was sustained, and her income was held to cease when the legatee married; Brotzman's Estate, 133 Pa. 478, where there was a devise to testator's daughter "as long as she shall remain single and unmarried", and it was held that by her marriage she forfeited the benefit of the devise; Bennett v. Robinson, 10 Watts 348, where it was held that a devise to a wife, "only so long as she remains my widow", was determinable by her subsequent marriage. So in Commonwealth v. Stauffer, 10 Pa. 350, upon remarriage of a wife, the devisee of testatrix's real and personal estate provided she remained a widow for life.

Justus' Estate, 5 D. & C. 749, is an illustration of such a testamentary restraint being held void. There the daughter of the testator was made his beneficiary of a fund during her life, to be increased provided that should she survive her husband or should she separate from him and have nothing to do with him. It was not sustained, as illegal, tending as an incentive or encouragement of the daughter to disregard her marital vows and leave her wedded spouse for the reward of increased testamentary benefits and not contemplating a divorce on legal grounds or even abandonment by the husband of his wife, as was the case in Gunning's Estate (No. 1), 234 Pa. 139, which would seem to have gone to the extreme limit of sustaining a condition attached to a testamentary benefit, viz.: "The income of the balance to be given to Karl F. Miller, provided he is not living with the woman he married in 1899—one Jane Wilson, should she die, or he be divorced from her—that is finally divorced" his share to be increased. Karl Miller was, at the time of testatrix's death, and had ever since been living with the wife mentioned. Of the language quoted from the will, Mr. Justice Potter says (p. 142) : "It is a fair construction of the language used by testatrix to regard the condition placed upon Miller's right to take as applying to the time when the will became effective, that is, at the time of her death. This avoids the inference that by postponing the time of fulfillment of the condition to a time subsequent to her death, the testatrix intended to hold out an inducement to Miller to separate from, or procure a divorce from his wife. The prime purpose of the condition evidently was to prevent the then wife, Jane Wilson Miller, from receiving any benefit under the will."

Additional research has brought to our notice the case of Seaman's Estate, 218 N. Y. 77, 112 N. E. 576; and, cited therein Graydon's Executors v. Graydon et al., 23 N. J. Eq. 229, in both of which the testamentary restraining condition was held to avoid testamentary benefits otherwise vesting in beneficiaries named in the will. In the former, the testator willed of his estate, one-third share to his daughter Frances P. Oakley, widow of John B. H. Oakley absolutely; "provided, however, that at the time of my decease my said daughter Frances P. Oakley shall be married to some person other than one Leo Fassler, who now resides in the city of New York and is there engaged in the practice of law, or provided that at the time of my death the said Leo Fassler is dead." The will then further provided for a lessened interest in his estate in his daughter Frances P. Oakley, should she marry the said Fassler.

The court, Bertlett, C. J., held (p. 81) that such "condition is designed to prevent the marriage of the testator's daughter with a particular individual who is named in his will; and such prohibitions have not only received the sanction of judicial authority but we think may be justified by sound reasoning"; and he upheld such condition as not within those void on the ground of

public policy. Likewise, in the New Jersey case cited, it was held that directions in a will that, if one of the sons of the testator should marry a certain person named, he should take no part of the testator's estate but that the executors should dispose of it otherwise, as if that son had died in testator's lifetime, took effect as a residuary bequest upon the marriage of that son to the person named after testator's death; and that such a bequest to the son, that it should be void if within a stated time he should marry a daughter of a person named, was not illegal as a restraint of marriage.

If, as it is sometimes contended, to effect such avoidability there must follow in the will a gift or devise over upon occurrence of the condition, the will in the case at bar complies with that requirement.

We therefore decide that, by the marriage to Lottie Mitchell, the person proscribed by the testatrix, her son Laverne R. Osborne forfeited all rights under her will and has no interest in her real estate, although otherwise made a beneficiary, and that the title of such real estate vests under the substitutionary language of the will "to his heirs same to be equally divided", etc.

Some difficulty attends the construction and interpretation of this substitutionary language, arising from the direction it "shall be equally divided among such child or children, share and share alike, at their respective ages of twenty-one years".

While this devise is first "to his heirs", it is clear that by the later language directing it to be equally divided among his "children" the testatrix did not mean "heirs" as generally defined, but limited it to, as she stipulates, "children" only, and by the later words, "for him, her or them to hold the same absolutely and forever, their heirs and assigns", their titles are in fee simple, under the rule in Shelley's Case. The term "heirs", used by the testatrix in the second codicil to her will, dated November 18, 1919, likewise refers to such "children" and makes no change in their legal status intended by the original will.

In the construction we are now approaching, we are to consider the will as drawn, with the provision relating to the devise affecting the son, Laverne R. Osborne, as nonexistent, and as if the "item" naming him as a beneficiary had been omitted, and it to read as solely a direct devise to his children; it being noted that his marriage antedated the death of the testatrix. He having lawful issue, we also exclude the Home for the Friendless as a beneficiary, because it was only upon Laverne dying without issue that it would become entitled under the provisions of the will.

The question arises whether this devise is to the children as a "class" or as "individuals"?

We find that the general rule, stated in 28 R. C. L. 261, "is that a gift to a number of persons not named, but answering a general description, is a gift to a class"; and per Johnson, P. J. (affirmed by the Supreme Court), in Crozer's Estate, 257 Pa. 241, 245: "is indeterminate in number at the date of the will which may be enlarged or diminished, and finally determined at the death of the testator."

A devise identically the same as that at bar was determined to be as to a class, by the court in Larkin's Estate, 4 Del. Co. 340. To the same effect is Gross' Estate, 10 Pa. 360, where the devise was "unto the *children* of my brothers . . . and sisters . . . share and share alike, to them severally and their heirs and assigns for ever."

While it is the general rule that the death of the testator is the time for fixing the membership of the class: 28 R. C. L. 263; Fitzpatrick's Estate, 233 Pa. 33; Tatham's Estate, 250 Pa. 269; Thompson et al. v. Garwood et al.,

3 Whart. 287; Coggins' Appeal, 124 Pa. 10; when distribution is to be made among them upon some contingency or at some time subsequent to the testator's decease, then those and those only who belong to the class at that time are entitled to share in the distribution, whether born before or after the death of the testator, unless it appears by the will the testator's intention was otherwise. The present will expresses or implies no contrary intent, from the required fair and reasonable construction of the whole will: Schott's Estate, 78 Pa. 40.

As to the time of vesting, we adopt the rule which seems to be endorsed by Chief Justice Paxson in Coggins' Appeal, 124 Pa. 10, 30, thus: "Where the bequest [devise in the case at bar] is to children generally, payable at a certain period . . . all children are let in who come into esse before the first child attains the period appointed."

Or, as stated in 28 R. C. L. 266, and citations in note, "a gift to a class, . . . uncertain in number at the time of the testator's making his will, does not vest till the happening of the event which terminates the members of the class." If however, as in the case at bar, "a devise to a class is a present bequest, the beneficiaries who are in esse at the death of the testator take vested interests in the fund, but subject to open and let in after born members of such class who shall come into being before the time appointed for distribution."

Our opinion as to the wisdom of the present testatrix in her testamentary disposition of her property can have no weight in our decision, which must be a declaration in accord with her intent ascertained from the whole will, including the codicils.

We therefore enter our declaratory judgment as follows:

And now to wit, May 7, 1934:

First: Testatrix's son, Laverne R. Osborne, has no interest whatever in the real estate devised in the will of Harriet L. Osborne under consideration.

Second: The title to such real estate vests absolutely and in fee simple, under the devise to them, in the children of her son Laverne R. Osborne.

Third: Such devise is to said children as a class, and includes Harry Osborne, born before the death of the testatrix, and the remaining five born since her decease, viz.; Pearl Osborne, James Osborne, Edith Osborne, Laverne Osborne, and William Osborne; also such others, if any, as may be born hereafter, prior to the twenty-first birthday of the eldest, Harry Osborne, whether he be then living or deceased; share and share alike, to be divided equally.

Fourth: The necessity or benefit to the estate of authorizing her executor to sell and dispose of the real estate so devised, as directed by her will, are questions of fact, either determinable by the executor of his own motion, or on application and proof to the court of such necessity for conservation, by any of the devisees, such sale may be required.

In 28 R. C. L. 266, citing Roper et al. v. Roper et al., 58 N. C. 16, 75 Am. Dec. 427, it is stated that "If a member of a class is given his share before the possibility of future members ceases he should be required to give security for refunding in the event that the birth of another child shall render it necessary."

As this is a question which can arise at bar only should the land here devised be converted into money for distribution, we deem it unnecessary to pass upon it in these proceedings.

From Gerritt E. Gardner, Montrose, Pa.